Bruce Wayne COLLETTE, Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

No. WD 37668.

Missouri Court of Appeals, Western District.

Oct. 7, 1986.

Dale P. Sullivan, Kansas City, for appellant.

Albert A. Riederer, Pros. Atty., Robert Frager, Asst. Pros. Atty., Kansas City, for respondent.

Before LOWENSTEIN, P.J., and MANFORD and GAITAN, JJ.

MANFORD, Judge.

This is a direct appeal from a judgment denying the reinstatement of motor vehicle driving privileges. The judgment is reversed and the cause is remanded with directions.

Appellant has presented a sole point with numerous subparagraphs in which he has charged that the trial court erred in denying his request for reinstatement of his privilege to operate a motor vehicle. Appellant's alleged errors can be summarized as follows:

The trial court erred in its finding that there was a lawful arrest of appellant pursuant to § 577.039, RSMo Supp.1984, and that appellant refused to submit to a chemical test, and thus his license was subject to revocation pursuant to § 577.041, RSMo Supp.1984 because the evidence failed to establish a lawful arrest pursuant to § 577.039; and there being no lawful arrest, there was no sufficient evidence to support a revocation pursuant to § 577.041.

The facts, depicted upon a record which at best is described as meager, are as follows:

On August 7, 1985, (the year was not even solicited by the Assistant County Prosecutor but was gleaned from the remainder of the file by this court) Kansas City, Missouri police officer Russell Mathias was dispatched to the scene of a one-vehicle accident at 87th Street and I–435 within the city limits of Kansas City, Missouri. Upon his arrival, the officer found a 1980 Mazda "nose down in the ditch, two occupants in the car." At the time of the arrival of the officer at the scene, appellant was already in an ambulance. The officer did not talk to appellant at the scene. The officer remained at the scene to investigate, and from his investigation, along with a later admission by appellant, learned that appellant had been driving the Mazda. The officer then proceeded to the emergency room of a local hospital and talked with appellant.

Further testimony of the officer is not only critical to the disposition of this case, but setting forth that testimony also illustrates the manner in which the evidence in this case was introduced to the trial court:

Q. Okay. What happened after you arrived at the scene and noticed that he was in the ambulance?

A. Okay. I got the information from him as to where they—they were getting ready to leave, where they were headed. I went ahead and worked the scene of the accident and proceeded to the hospital to talk to the passenger and the driver.

Q. Okay. Did you ever see Mr. Collette again, after that?

A. After I arrived at the hospital?

Q. Yes.

A. Yes, I talked to him in the emergency room.

Q. Okay. Did you ask him to take a breathalyzer test or to give any kind of blood-alcohol sample?

A. Yes, sir. I did.

Q. And what—

A. He declined.

Q. And what was the nature of your request? Was it breath or blood?

A. Blood.

Q. Okay. Was Mr. Collette, at any time, ever placed under arrest?

A. Not there, no.

Q. Okay. Was he ever placed under arrest at any time for any of these offenses?

A. Yes, sir.

Q. And was he, after arrested, asked to take a blood-alcohol test?

A. He was notified that—to pick up his ticket at the traffic unit.

Q. Okay.

A. And no, he wasn't.

Q. Okay. Was—What was his response to taking the breathalyzer test or the blood-alcohol—

MR. GARNER: (ATTORNEY FOR MR. COLLETTE): Your Honor, I object. The answer has been—The question has been asked and answered, and the witness has stated that he did not refuse.

THE COURT: Objection be sustained.

BY MR. HASSAN (ASSISTANT COUNTY PROSECUTOR): Q. Was he advised of the consequences of a refusal to give a blood-alcohol sample?

A. Yes, sir.

Q. And what was his response to this?

A. His response was, "No," and giving a—gave a description of where I could put his driver's license.

Q. Okay. How any requests were made to Mr. Collette?

A. Numerous.

Q. And you, yourself, made these requests?

A. Yes, sir.

Q. And to clarify your testimony, at what point was Mr. Collette arrested, if at all? I didn't quite understand your response.

A. Okay. I notified him of what would happen if he refused the breathalyzer. He refused. I—

MR. GARNER: Your Honor, I object and request that that response be stricken from the record and that—

THE COURT: Objection overruled.

BY MR. HASSAN:

Q. If you'll—If you'll continue, Officer.

A. I proceeded back to the station, or finished writing the ticket at the hospital and took it back to the station, put them in the file. He was notified by mail that the tickets were there, and he returned to the traffic unit and picked up his tickets.

Q. Was he ever transported to the police station?

A. No, sir.

Q. And what was the reason he was not?

A. He was still being seen by the doctor—

Q. Okay.

A. —in the emergency room, some two hours after it happened. That's why—

Q. And how long were you at the hospital?

A. Two hours.

Q. And what was the reason you stayed therefor two hours?

A. He was in the X-ray unit most of the time while I was there, and we were getting to talk to the passenger in the vehicle. His wife was fine and I got the driver's license information from her. And then I talked to him—

Q. Okay. And throughout that two hours did you ever, once again, try to obtain a blood-alcohol sample?

A. Several times.

On cross-examination, the officer was asked, and he responded, as follows:

(BY MR. GARNER):

Q. Officer, what was this alleged violation?

A. Driving while intoxicated and careless and reckless.

Q. I see. Okay. And what was the time of the alleged violation?

A. Approximately 9:42.

Q. 9:42? I see. And, Officer, at what time did you propose to arrest the—Mr. Collette?

A. Okay. He declined the breathalyzer.

Q. Officer, what time did you allegedly arrest Mr. Collette?

A. Let me see here. Approximately 23:30.

Q. 23:30? Could you—Officer, did you prepare an affidavit and send it in to the director of revenue?

A. That I did, yes.

Q. And approximately what time did you state in that affidavit, which you swore to, that you allegedly arrested Mr. Collette?

A. 23:42.

Q. Now, 23:42, does that mean 11:42 p.m.?

A. Uh-huh.

Q. And the time of the alleged violation, 9:42 p.m.; is that correct?

A. That is correct.

Q. Was that two hours that elapsed?

A. Not quite.

MR. GARNER: Your Honor, I request that you find that there was an unlawful arrest on the basis of 577.039 which requires the arrest to take place within one and one-half hours after the alleged violation.

MR. HASSAN: Request to redirect the witness, Judge.

THE COURT: Sustained.

From the foregoing account on the record, this court is able to ascertain some things, but is left to wonder about one other. It is obvious, both from the direct testimony and that given by the officer on cross-examination, that the officer was in the presence of appellant, first at 9:42 p.m., then for some undetermined time later at the hospital in the emergency room, and then at 11:42 p.m., he formally arrested appellant. It is obvious that the officer repeatedly attempted to secure a blood sample from appellant for the purpose of chemical analysis for alcohol. It is also quite obvious that appellant refused repeatedly to submit a blood sample. It is further apparent from this record that the officer attempted to secure a blood sample *before* he placed appellant under arrest.[1] This court, on the other hand, cannot quite ascertain what was intended by that portion of the record and the ruling by the trial court as follows:

MR. GARNER: Your Honor, I request that you find that there was an unlawful arrest on the basis of 577.039 which requires the arrest to take place within one and one-half hours after the alleged violation.

MR. HASSAN: Request to redirect the witness, Judge.

THE COURT: Sustained.

This court cannot determine if the trial court was sustaining appellant's motion for a finding of a lawful arrest or if the trial court was sustaining the prosecutor's request to further examine his own witness.

Neither appellant nor the Director disputes or even questions the fact that the arrest of appellant was without a warrant. Indeed, no warrant is required under § 577.039, which reads:

577.039. **Arrest without warrant, lawful, when**

An arrest without a warrant by a law enforcement officer, including a uniformed member of the state highway patrol, for a violation of section 577.010 or 577.012 is lawful whenever the arresting officer has reasonable grounds to believe that the person to be arrested has violated the section, whether or not the violation occurred in the presence of the arresting officer; provided, however, that any such arrest without warrant must be made within one and one-half hours after such claimed violation occurred.

As regards the foregoing statute, part of the statute was met upon the officer's making an investigation, which disclosed to him (from witnesses and by appellant's own admission) that appellant was operating the vehicle and appellant had been drinking. In other words, the officer was not required to have personally observed appellant operating the vehicle or to have firsthand knowledge that appellant had been

---

1. The fact as to the time of arrest distinguishes this case from *Montesano v. James,* 655 S.W.2d 137 (Mo.App.1983) and *State v. Ikerman,* 698 S.W.2d 902 (Mo.App.1985).

drinking to have formed the "reasonable grounds to believe that the person to be arrested had violated the section ..." Section 577.039 further refers to § 577.010 or § 577.012, RSMo Supp.1984:

Section 577.010 reads as follows:

577.010. **Driving while intoxicated**

1. A person commits the crime of **"driving while intoxicated"** if he operates a motor vehicle while in an intoxicated or drugged condition.

2. Driving while intoxicated is for the first offense, a class B misdemeanor. No person convicted of or pleading guilty to the offense of driving while intoxicated shall be granted a suspended imposition of sentence for such offense, unless such person shall be placed on probation for a minimum of two years.[2]

Section 577.012 reads as follows:

577.012. **Driving with excessive blood alcohol content**

1. A person commits the crime of **"driving with excessive blood alcohol content"** if he operates a motor vehicle in this state with ten-hundredths of one percent or more by weight of alcohol in his blood.

2. As used in this section, percent by weight of alcohol in the blood shall be based upon grams of alcohol per one hundred milliliters of blood and may be shown by chemical analysis of the person's blood, breath, saliva or urine. For the purposes of determining the alcoholic content of a person's blood under this section, the test shall be conducted in accordance with the provisions of sections 577.020 to 577.041.

3. For the first offense, driving with excessive blood alcohol content is a class C misdemeanor.

As can be observed above, § 577.039 also presents a specific time limitation during which a warrantless arrest can be made, and that time limitation is found in that portion of the statute which reads, *"however that any such arrest without warrant must be made within one and one-half hours after such violation occurred."* (Emphasis added.) This language is clear and precise and grants no allowance to this court to construe that portion of the statute.

With the foregoing portion of § 577.039 as a background, attention must again be directed to the evidence in this particular case. It is obvious from that evidence that the officer did not place appellant under arrest within the specific time limitation prescribed by the statute. The officer, in good faith, diligently and repeatedly attempted to secure a blood sample, but those efforts were in vain upon his failure to arrest appellant within the time prescribed. The only conclusion which can follow is that the evidence fails to establish a lawful arrest.

This record reveals an attempt by the prosecutor to assert a lawful arrest, and it is obvious that the prosecutor was able to persuade the trial court that a lawful arrest had occurred.[3] The record reads as follows:

MR. HASSAN: Judge, the state's response to that would be as the officer has testified. Mr. Collette was in emergency and he was not able to formally place him under arrest. The definition of an arrest, as case law and the Supreme Court has held, is when a person is—you know, liberty is restrained, they're not free to go. And obviously, he was in the hospital and he was in X-ray. He was not free to go.

MR. GARNER: Your Honor, the officer gave a sworn statement as to the exact time that he made this arrest. Mr. Collette was laying in the hospital emergen-

---

2. Respondent urges this case is controlled by *State v. Harris,* 670 S.W.2d 73 (Mo.App.1984), because appellant was not arrested for the violations prescribed by § 577.039. The record, however, dispels this by the officer's testimony that appellant was arrested for violating § 577.-010.

3. The fallacy of the prosecutor's argument on what constituted a lawful arrest is so apparent that it commands no further consideration than to be merely pointed out herein.

cy room bleeding from the head and leg at this time, and I think many things are questionable in this particular case. If the legislature wanted a reasonable time, or to allow for these contingencies, surely they would have written the statute in that manner. They made it very clear and specific.

MR. HASSAN: Judge, I think the legislative intent of the statute contemplates that there is an opportunity to arrest a person within that time when, in fact, the officer has testified that there wasn't. And in fact, the only reason he waited that long was to provide him with further opportunity not to be arrested, to take the breathalyzer test. So, by staying there longer, he gave him the benefit of the doubt if he—It would turn against him to rule as counsel has stated.

The foregoing then prompted the following from the trial court:

THE COURT: Arrest means presence or body retained at will. He was in the hospital bed. I don't think he was detained by the police at that time. So the Court's going to rule—overrule that motion.

Do you have anything further or anything else that you wanted to explain?

MR. HASSAN: Nothing further, Judge.

THE COURT: All right. You want to testify?

MR. GARNER: Well, would you—We would reinstate our request that you find that there was not a proper arrest in this, and request that you direct the director of revenue to reinstate Mr. Collette's license.

THE COURT: I think there was a proper arrest. He wasn't under two hours, but he wasn't under arrest until after he got free from the medics. And he wasn't restrained in that he could have gone out of the hospital at that time if he wanted to, able to. So—

MR. GARNER: Right.

THE COURT: The whole point is that he was not under arrest until after he became through with the emergency services.

MR. GARNER: That's correct, and more than one and one-half hours had elapsed.

THE COURT: But he didn't have—He didn't have him under arrest when he went into the hospital. He wasn't under arrest until he got out of the hospital. That's when they arrested him.

MR. GARNER: Well, Your Honor, I read this thing to say that it is—Did you have, Officer, Did you have a warrant?

THE WITNESS: No, sir.

MR. GARNER: He didn't have a warrant.

THE COURT: Well, I'm betting on the court of appeals. I don't want to decide—not on this issue—I would—

MR. GARNER: Well, I would—

THE COURT: —overrule any—

MR. GARNER: —request the opportunity then to present my case.

THE COURT: You may proceed.

The foregoing clearly displays the understanding by the trial court that appellant was not arrested until after he was released from medical treatment. The evidence (by way of an affidavit confirmed by his trial testimony) from the arresting officer, confirmed appellant's arrest at 11:42 p.m. The evidence further reveals that the arrest was beyond the specific time limitation of one and one-half hours prescribed by § 577.039.

How the trial court could have, at the same moment, determined from the evidence that more than one and one-half hours had lapsed, been aware of the specific time prescribed by the statute, and then conclude there was a lawful arrest remains a mystery to this court. The record clearly reveals that the evidence failed to establish a lawful arrest within the requirements set forth within § 577.039, and it was clearly erroneous for the trial court to have made such a finding.

The second portion of this appeal deals directly with § 577.041, RSMo Supp.1984, which reads as follows:

577.041. **Refusal to submit to chemical test—revocation of license—hearing**

1. If a person under arrest refuses upon the request of the arresting officer to submit to a chemical test, which request shall include the reasons of the officer for requesting the person to submit to a test and which also shall inform the person that his license may be revoked upon his refusal to take the test, then none shall be given. In this event, the arresting officer, if he so believes, shall make a sworn report to the director of revenue that he has reasonable grounds to believe that the arrested person was driving a motor vehicle while in an intoxicated condition and that, on his request, refused to submit to the test. Upon receipt of the officer's report, the director shall revoke the license of the person refusing to take the test for a period of one year; or if the person arrested be a nonresident, his operating permit or privilege shall be revoked for one year; [or] if the person is a resident without a license or permit to operate a motor vehicle in this state, an order shall be issued denying the person the issuance of a license or permit for a period of one year.

2. If a person's license has been revoked because of his refusal to submit to a chemical test, he may request a hearing before a court of record in the county in which he resides or in the county in which the arrest occurred. Upon his request the clerk of the court shall notify the prosecuting attorney of the county and the prosecutor shall appear at the hearing on behalf of the arresting officer. At the hearing the judge shall determine only:

(1) Whether or not the person was arrested;

(2) Whether or not the arresting officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated condition; and

(3) Whether or not the person refused to submit to the test.

3. If the judge determines any issue not to be in the affirmative, he shall order the director to reinstate the license or permit to drive.

4. Requests for review as herein provided shall go to the head of the docket of the court wherein filed.

It is obvious from a reading of § 577.041 that revocation of an operating permit can occur upon a party's refusal to submit to a chemical test. This provision is a valid, acceptable, and preferable way for our society to attempt to protect its members from the serious consequences of the operation of motors vehicles by persons while intoxicated.

■ However, the application and effect of § 577.041 rests upon two basic requirements. *The first is that the person must be under arrest. The second is that the person refused to submit to a chemical test.* A refusal without a prior arrest does not meet the requirements of the statute. This is quite evident within the first portion of § 577.041, which reads: "1. If a person *under arrest refuses upon the request of the arresting officer* to submit to a chemical test ..." (Emphasis added.)

■ With § 577.041 as a background, attention is again directed to the evidence upon the record. The evidence clearly establishes that appellant did not refuse to submit to a chemical test while he was under arrest. The evidence clearly establishes the refusal occurred *prior to the arrest* of appellant. Thus, the requirements of § 577.041 were not met under the evidence herein.

The trial court erred in finding that the evidence met the requirements of § 577.041 when on the face of the record that clearly was not what the evidence revealed.

A further note must be added before the conclusion of this opinion. This court has no way to know *why* the Missouri General Assembly prescribed such a specified time limit of one and one-half hours. It is obvious, however, that such a limitation ignores the reality often faced by investigating officers at the scene of an accident and the time following an accident. This case is a good illustration. Herein, the officer ar-

rived at the scene. Appellant was already under medical care and was being prepared for delivery to a local hospital. What was the officer supposed to do? Intercept the medical personnel and arrest appellant? While perhaps not totally impossible in this case, such a possibility might arise in any accident if a driver's injuries were so severe that interruption by an officer might jeopardize the life of the driver; or alternatively, a driver might be in such poor physical condition that understanding of an arrest might not be possible. A further fact might well be (and this is obvious in this case) that at the scene, the officer might not have the opportunity to determine "reasonable grounds" before the driver has been removed from the scene. What does the officer do now? Proceed to the hospital and effect an arrest.

The officer herein proceeded to the hospital. In the instant case, it must be concluded that the officer had the opportunity to advise appellant he was under arrest. That conclusion is reached because the officer testified that he repeatedly sought a blood sample from appellant but that appellant repeatedly refused. However, what if during a period of more than one and one-half hours following the claimed violation the driver is not available to the officer because he is under medical treatment and/or is in such physical condition that he would not understand his being arrested? The statute places an investigating officer in an almost impossible position in the attempt to comply with § 577.039 which is prerequisite to the application of § 577.041. Thus, the specified time limitation of the statute (§ 577.039), along with no provision to deal with those cases suggested by the questions above, clearly defeats the result sought by § 577.041. The General Assembly is urged to consider the problem.

In addition, it should be noted that no criticism is offered toward the officer herein. The record is quite clear that he investigated the matter, spent considerable effort to secure a blood sample, and had a lawful arrest been achieved, the results reflecting his efforts would have been quite different. Perhaps investigating officers should be informed of the specific requirements of § 577.039, particularly until such time as the General Assembly perhaps amends § 577.039 in such a manner as to address the particular problems faced by investigating officers.

Only the appellant knows if he was intoxicated at the time he was operating his motor vehicle. In a pure legal sense, this court is not even permitted to consider whether appellant was intoxicated, but this court would be remiss if it failed to caution appellant, and indeed anyone who operates a motor vehicle while intoxicated, not to seek solace in this opinion alone, but rather to consider the consequences which might arise as the direct result of the operation of a motor vehicle in an intoxicated condition.

The evidence upon this record clearly establishes there was not a lawful arrest pursuant to, and as required, by § 577.039. In addition, the evidence upon this record clearly establishes that a refusal as prescribed by § 577.041 did not arise because at the time of the refusal, appellant was not under arrest.

For the reasons set forth herein, the judgment of the trial court is hereby reversed in all respects, and this cause is remanded to the trial court with specific directions that the trial court issue its order to the Missouri Director of Revenue directing that the previous order of revocation issued by the Missouri Director of Revenue is declared void and the same is vacated, and that the Missouri Director of Revenue rescind the previous order of revocation and reinstate the motor vehicle operator's license of appellant. The reinstatement, however, is subject to other matters, if any, pertaining to appellant's driving privileges of which this court may not be aware, and this reinstatement is not to be construed as any adjudication or waiver of other matters, if any, which might involve or pertain to the driving privileges of appellant.

All concur.