Lavon Lena FORSTE, Appellant,

v.

Duane BENTON, Director of Revenue, State of Missouri, Respondent.

No. 16689.

Missouri Court of Appeals, Southern District, Division One.

July 23, 1990.

James M. Kelly, Republic, for appellant.

No appearance for respondent.

CROW, Presiding Judge.

This appeal presents the question whether § 577.041.1, RSMo Supp.1987, authorizes the Director of Revenue to revoke the motor vehicle operator's license of a person who, upon being arrested for driving a motor vehicle while in an intoxicated condition by a reserve police officer of the Springfield Police Department, refuses the officer's request to submit to a chemical test of her breath. The case comes to us on an agreed statement as the record on appeal. Rule 81.13, Missouri Rules of Civil Procedure (1990).

On February 8, 1989, the Springfield Police Department was notified that a motor vehicle accident had occurred within the Springfield city limits. A "reserve police officer" of the Springfield Police Department went to the scene, interviewed appellant, and determined to his satisfaction that she had been the driver of one of the vehicles involved in the accident and that she was intoxicated. The reserve officer told appellant he was placing her under arrest. Appellant was transported to police headquarters where she stated she would not submit to a chemical test of her breath.

The reserve officer filed a sworn report with the Director of Revenue stating the officer had arrested appellant, that at the time of the arrest he had reasonable grounds to believe she had been operating a motor vehicle while in an intoxicated condition, and that on his request she had refused to submit to a chemical test of her breath. Upon receipt of the report, the Director sent notice to appellant that her motor vehicle operator's license would be revoked for one year pursuant to § 577.041.1, RSMo Supp.1987, because of her failure to submit to the test.

Appellant filed a request for a hearing in the Circuit Court of Greene County per § 577.041, RSMo Supp.1987, which provides in pertinent part:

"....

2. If a person's license has been revoked because of his refusal to submit to a chemical test, he may request a hearing before a court of record ... in the county in which the arrest occurred. Upon his request the clerk of the court shall notify the prosecuting attorney of the county and the prosecutor shall appear at the hearing on behalf of the arresting officer.

At the hearing the judge shall determine only:

(1) Whether or not the person was arrested;

(2) Whether or not the arresting officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated condition; and

(3) Whether or not the person refused to submit to the test.

3. If the judge determines any issue not to be in the affirmative, he shall order the director to reinstate the license or permit to drive.

...."

The trial court conducted a hearing at which appellant appeared in person and with counsel, and an assistant prosecuting attorney appeared on behalf of the arresting officer. § 577.041.2, RSMo Supp.1987. Evidence before the trial court revealed that the reserve officer who arrested appellant had not been certified as a peace officer by the Director of the Department of Public Safety pursuant to chapter 590, RSMo 1986, as amended. At the time of the hearing the reserve officer "had been serving as a non-certified, reserve officer for the Springfield Police Department for a period of approximately five years."

After the hearing the trial court entered judgment finding that appellant was arrested February 8, 1989, by the reserve officer, that at the time of such arrest the officer had reasonable grounds to believe appellant had been driving a motor vehicle while in an intoxicated condition, and that appellant refused to submit to a chemical test of her breath. Accordingly, the trial court denied appellant's prayer that the Director of Revenue be prohibited from revoking appellant's motor vehicle operator's license. This appeal followed.

Appellant's well-written brief presents one point relied on:

"The trial court erred in holding that the appellant had been placed under arrest at the time [the reserve police officer] requested that appellant submit to a chemical test of her breath in that [the officer] had not been certified by the Director of Public Safety pursuant to the requirements of § 590.100, *et seq.*, RSMo, and absent such certification, [the officer] had no power or authority to place appellant under arrest or request that she submit to a chemical test pursuant to § 577.041, RSMo."

The point requires study of the following statutes.

Section 590.100, RSMo Supp.1988:

"As used in sections 590.100 to 590.-180, the following terms mean:

. . . .

(4) **'Peace officer'**, members of the state highway patrol, all state, county, and municipal law enforcement officers possessing the duty and power of arrest for violation of any criminal laws of the state or for violation of ordinances of counties or municipalities of the state;

(5) **'Reserve officer'**, any person who serves in a less than full-time law enforcement capacity, with or without pay, and who, without certification, has no power of arrest and who, without certification, must be under the direct and immediate accompaniment of a certified peace officer of the same agency at all times while on duty."

Section 590.105, RSMo Supp.1988:

"1. A program of mandatory standards for the training and certification of peace officers and a program of optional standards for the training and certification of reserve officers in this state is hereby established. . . ."

Section 590.110, RSMo Supp.1988:

"1. No person shall be appointed as a peace officer by any public law enforcement agency, which is possessed of the duty and power to enforce the general criminal laws of the state or the ordinances of any political subdivision of this state, unless he has been certified by the director as provided in sections 590.100 to 590.180, unless he is appointed on a probationary basis, and the hiring agency, within one year after his initial appointment, takes all necessary steps to qualify him for certification by the director. Unless a peace officer is certified within the one-year period after appointment, his appointment shall be terminated and he shall not be eligible for appointment by any other law enforcement agency as a peace officer.

. . . .

3. Any person who serves as a reserve officer in any public law enforcement agency which is possessed of the duty and power to enforce the general criminal laws of this state or the ordinances of any political subdivision of this state may, at the option of the political subdivision in which the officer is employed, participate in the training program required under the provisions of sections 590.100 to 590.180, and, upon completion of such training program, shall be certified by the director in the same manner as provided for peace officers."

Section 590.115, RSMo Supp.1988:

". . . .

3. Training specified in sections 590.-100 to 590.180 is recommended but not required of a reserve officer who was appointed as a reserve officer prior to August 15, 1988, unless and until any such officer is appointed as a reserve officer after August 15, 1988, by a different law enforcement agency than the one to which he was appointed on August 13, 1988. Such a reserve officer and every reserve officer appointed after August 15, 1988, may, at the option of the political subdivision in which the officer is employed, satisfactorily complete within one year from the date of his initial probationary appointment the training requirements for peace officers established by the director for each specific jurisdiction or be enrolled in such a certified training program to be completed within the first year of appointment.

. . . .

6. Peace officers meeting the requirements in subsection ... 3 ... of this section shall be certified by the director as having completed the training requirements under sections 590.100 to 590.180."

Section 590.130, RSMo Supp.1988:

"... No arrest shall be deemed unlawful in any criminal or civil proceeding solely because the peace officer is not certified under the terms of sections 590.100 to 590.180. Evidence on the question cannot be received in any civil or criminal case."

Section 544.216, RSMo 1986:

"Any sheriff or deputy sheriff, any member of the Missouri state highway patrol, and any county or municipal law enforcement officer in this state, except those officers of a political subdivision or municipality having a population of less than two thousand persons or which does not have at least four full-time nonelected peace officers unless such subdivision or municipality has elected to come under and is operating under the provisions of sections 590.100 to 590.150, RSMo, may arrest on view, and without a warrant, any person he sees violating or who he has reasonable grounds to believe has violated any law of this state, including a misdemeanor, or has violated any ordinance over which such officer has jurisdiction. The power of arrest authorized by this section is in addition to all other powers conferred upon law enforcement officers, and shall not be construed so as to limit or restrict any other power of a law enforcement officer."

Section 577.039, RSMo 1986:

"An arrest without a warrant by a law enforcement officer, including a uniformed member of the state highway patrol, for a violation of section 577.010 or 577.012 is lawful whenever the arresting officer has reasonable grounds to believe that the person to be arrested has violated the section, whether or not the violation occurred in the presence of the arresting officer; provided, however, that any such arrest without warrant must be made within one and one-half hours after such claimed violation occurred."

Section 577.010 referred to in the above-quoted statute defines the crime of driving while intoxicated.

Section 577.001.3, RSMo 1986:

"As used in this chapter, the term **'law and enforcement officer'** or **'arresting officer'** includes the definition of law enforcement officer in subdivision (17) of section 556.061, RSMo, and military policemen conducting traffic enforcement operations on a federal military installation under military jurisdiction in the state of Missouri."

Section 556.061(17), RSMo Supp.1987:

" **'Law enforcement officer'** means any public servant having both the power and duty to make arrests for violations of the laws of this state, and federal law enforcement officers authorized to carry firearms and to make arrests for violations of the laws of the United States[.]"

Appellant maintains that by reason of § 590.100(5), quoted earlier, a reserve police officer of the Springfield Police Department who has not been certified by the Director of the Department of Public Safety pursuant to § 590.115.6, also quoted earlier, has no power to arrest. That being so, says appellant, the Director of Revenue was without authority to revoke her motor vehicle operator's license inasmuch as § 577.041 authorizes revocation for refusal to take the chemical test only if the person is under arrest at the time of the refusal.

Section 577.041.1, RSMo Supp.1987, provides in pertinent part:

"If a person under arrest refuses upon the request of the arresting officer to submit to any test allowed under section 577.020, then none shall be given ... In this event, the arresting officer ... shall make a sworn report to the director of revenue that he has reasonable grounds to believe that the arrested person was driving a motor vehicle while in an intoxicated condition and that, on his request, refused to submit to the test. Upon receipt of the officer's report, the director

shall revoke the license of the person refusing to take the test for a period of one year...."

In *Collette v. Director of Revenue*, 717 S.W.2d 551, 557[2] (Mo.App.1986), the Western District of this Court held:

"... the application and effect of § 577.041 rests upon two basic requirements. *The first is that the person must be under arrest. The second is that the person refused to submit to a chemical test.* A refusal without a prior arrest does not meet the requirements of the statute."

In *Collette* the Western District determined that the evidence clearly established the motorist did not refuse to submit to the test while he was under arrest; instead, the evidence clearly established that his refusal occurred prior to arrest. *Id.* at 557[3]. Consequently, revocation of the motorist's license was not authorized by § 577.041.1. *Id.*

It is thus essential in the instant case that we determine whether the reserve police officer who purported to arrest appellant for driving a motor vehicle while in an intoxicated condition had the power to make arrests. If the officer lacked that power, no arrest occurred and it is clear under *Collette* that absent an arrest a refusal to submit to a chemical test of one's breath does not authorize revocation of his motor vehicle operator's license under § 577.041.

We find no Missouri case deciding whether a non-certified reserve police officer of a municipal police department has the power of arrest.

■ The record in the instant case is bare of any showing that the City of Springfield, by charter or ordinance, has undertaken to grant the power of arrest to its reserve police officers. We are, however, authorized to take judicial notice of the Charter of the City of Springfield. Mo. Const. Art. VI, § 19 (1945, amended 1971); *City of Hannibal v. Winchester*, 391 S.W.2d 279, 286[13] (Mo. banc 1965). We have therefore examined the Charter, but have found nothing therein pertaining to reserve police officers. As we may not take judicial notice of the existence or contents of city ordinances, *Consumer Contact Co. v. Dept. of Revenue*, 592 S.W.2d 782, 785[4] (Mo. banc 1980), we have no way to determine whether the City of Springfield has, by ordinance, endeavored to authorize its reserve police officers to make arrests. Accordingly, we are relegated exclusively to the statutes quoted earlier in this opinion.

■ Section 590.100(5) defines a reserve officer as any person who serves in a less than full-time law enforcement capacity, with or without pay, "and who, without certification, has no power of arrest and who, without certification, must be under the direct and immediate accompaniment of a certified peace officer of the same agency at all times while on duty." It is inferable from that provision that a reserve officer who has not been certified as having completed the training requirements of chapter 590 is not empowered to make arrests.

Section 544.216, which enumerates the types of officers authorized to make arrests, does not mention reserve officers.

Section 577.039 specifically authorizes an arrest without warrant for driving while intoxicated "by a law enforcement officer, including a uniformed member of the state highway patrol."

Section 577.001.3, which undertakes to define the term "law and enforcement officer" for the purpose of chapter 577, refers to the definition in § 556.061(17). The latter statute defines law enforcement officer, insofar as pertinent here, as "any public servant having both the power and duty to make arrests for violations of the laws of this state."

We are thus led down a circuitous statutory trail without ever finding anything squarely saying a non-certified reserve police officer does, or does not, have the power of arrest.

One thing, however, is certain. Reserve officers are defined differently than peace officers in § 590.100. The difference must be significant because § 590.130 provides that no arrest shall be deemed unlawful in

any criminal or civil proceeding solely because the *peace officer* is not certified under chapter 590. There is no similar proviso that an arrest shall not be deemed unlawful solely because the *reserve officer* is not certified.

Section 590.110.1, it will be recalled, states that no person shall be appointed a peace officer unless he has been certified per chapter 590, but it authorizes appointment "on a probationary basis" with the hiring agency to take "all necessary steps to qualify him for certification" within one year after initial appointment. This provision obviously allows non-certified individuals to be appointed peace officers, with § 590.130 specifically providing that no arrest by such officers shall be deemed unlawful in any criminal or civil proceeding solely because such officers are not certified.

It seems to us that by failing to include in § 590.130 a proviso similarly insulating arrests by reserve officers from attack, the General Assembly of Missouri intended that reserve officers without certification have no authority to arrest. We can reach no other conclusion from § 590.130.

A question analogous to the one before us was presented to the Attorney General of Missouri in 1975 by a member of the General Assembly. It involved § 66.250, RSMo Supp.1973 (since repealed), which established certain training requirements for anyone appointed after September 28, 1971, as a police officer in any police department in a county of the first class having a charter form of government. The question addressed to the Attorney General was whether "auxiliary policemen" of a city within such a county could carry firearms and make arrests and the applicability of § 66.250 to such persons. The Attorney General answered:

> "Whether a person is a police officer depends upon whether or not the person has been commissioned as a bona fide police officer. If the person has not been commissioned as a bona fide police officer he is not a police officer and does not have any greater power to make arrests or to carry firearms than an ordinary citizen.

> A bona fide appointed police officer is subject to the provisions of Section 66.-250...." Op.Atty.Gen. No. 105, Klaffenbach, Apr. 9, 1975.

As we understand the Attorney General's opinion, he concluded that an auxiliary policeman in 1975 had no greater power to make arrests than an ordinary citizen. Although an opinion of the Attorney General is not binding on the courts or the citizenry, it may be, and often is, persuasive. *Mesker Bros. Industries, Inc. v. Leachman*, 529 S.W.2d 153, 158[7] (Mo.1975).

The authority to arrest should not be vested by inference. 6A C.J.S. *Arrest* § 11, p. 19 (1975). In Missouri a statute (§ 544.216, quoted earlier) names the types of officers who may arrest. Reserve officers are not mentioned. In the absence of a provision in the statute conferring the authority to arrest, officers other than regular police officers have no greater authority to make an arrest without a warrant than is possessed by a private person. 6A C.J.S. *Arrest* § 17, p. 33 (1975).

In the instant case a private person would have lacked authority to arrest appellant, as the crime for which she was arrested was the class B misdemeanor of driving while intoxicated. *State v. Devlin*, 745 S.W.2d 850, 851–52 (Mo.App.1988); *Settle v. State*, 679 S.W.2d 310, 317–18 (Mo.App.1984), *cert. denied*, 472 U.S. 1007, 105 S.Ct. 2701, 86 L.Ed.2d 717 (1985). Therefore, even if we viewed the purported arrest of appellant as a citizen's arrest it would have been invalid.

We have found nothing arguably conferring the power of arrest on the non-certified reserve police officer who undertook to arrest appellant.[1] We are thus led to the inescapable conclusion that the officer had no power of arrest. Whether reserve police officers who have not been certified per chapter 590 should, as a matter of

---

1. Although (1) an assistant prosecuting attorney appeared at the hearing in the trial court on behalf of the reserve police officer, and (2) appellant served her brief on the prosecuting attorney, no brief has been filed in this Court on behalf of the Director of Revenue.

public policy, be vested with the power to arrest is not for us to decide. *Brinkmann v. Common School Dist. No. 27*, 238 S.W.2d 1, 6[7] (Mo.App.1951).

As there was no arrest in the instant case the Director of Revenue was without authority to revoke appellant's motor vehicle operator's license. *Collette*, 717 S.W.2d at 557[3].

The judgment is reversed and the case is remanded to the trial court, which is directed to issue an order commanding the Director of Revenue to reinstate appellant's motor vehicle operator's license.

PREWITT and PARRISH, JJ., concur.