Jon M. BARIS, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 45981.

Missouri Court of Appeals,
Western District.

Feb. 2, 1993.

Irl B. Baris, St. Louis, for appellant.

Eva C. Sterner, Asst. Pros. Atty., Boone County, Columbia, for respondent.

Before LOWENSTEIN, C.J., and FENNER and HANNA, JJ.

LOWENSTEIN, Chief Judge.

At a bench trial, the judge found Jon M. Baris guilty of § 302.220, RSMo.Cum.Supp. 1991. As applicable here, this misdemeanor prohibits a person from knowingly possessing an altered driver's license. The trial court assessed a $200 fine against Baris.

Jerry Armentrout, an officer with the University of Missouri Police Department, saw the defendant Baris walking with two young ladies in the early morning hours of August 31, 1991, near the intersection of Richmond and Kentucky in Columbia, Missouri. Armentrout saw Baris throw a beer can into the bushes and asked him for ID. Baris removed a temporary Missouri driver's license from his wallet, and as he did so, Armentrout noticed a second license in the wallet. The temporary license Baris produced showed he was underage to drink. After an arrest for either littering or minor in possession, Armentrout handcuffed Baris and searched and seized his wallet. The seized license showed a birth date that made Baris over 21, and was, indeed, an altered license. The prosecutor only charged Baris with possession of an

altered license under § 302.220, RSMo. Baris raises three points on appeal: 1) the University officer was not authorized under the law to make the arrest, 2) the search was not valid, and 3) the proof was insufficient as to the license being altered or of Baris having the requisite knowledge of any alteration. The first point is dispositive.

Armentrout testified he was a four year veteran of the University Police Department. On the summons given to Baris the legal file shows the caption "University of Mo. Police Dept." Armentrout made the arrest at a street corner in a part of Columbia where fraternities and sororities are located. Baris' attorney cross-examined Armentrout about his commission from the University, and he responded he did not have that commission with him. Baris' attorney brought to the court's attention § 172.350, RSMo. 1986 which gives the curators of the University authority to appoint six "watchmen" to "... protect property and preserve the peace and good order in the public buildings and upon the campuses, grounds and farms over which they may have charge and control". Under subsection 2 of that statute, these watchmen are given a certificate of authority which clothes that person "... with the same power to maintain order, preserve peace and make arrests as is now held by peace officers". The third subsection allows the curators of the school to appoint additional guards "... or watchmen who shall not be given the authority and powers hereby authorized."

The prosecutor made no record that Armentrout arrested Baris on the campus or any ground under the curators' control. At that point the prosecution inquired as to any commissions from the city or Boone County held by Armentrout. He testified he carried a Boone County commission but did not bring a copy with him. As to a City of Columbia Commission, during an offer of proof the witness testified he had a commission as a "special police officer" and produced a card bearing the title "SPECIAL TEMPORARY POLICE OFFICER," which covered the time between December 5, 1991, and December 15, 1992. When the prosecution attempted to question Armentrout about such a commission cover-

ing the time of the arrest in August 1991, Baris' attorney objected when the witness could not produce such a commission. Baris' attorney also objected to Armentrout's testimony that he held a city commission at the time of the arrest. The court took judicial notice of Armentrout's employment as a University officer and also a police officer for the City of Columbia. This court must decide this case on Armentrout's status and authority, as a peace officer, to make the arrest and search Baris for the altered driver's license. The prosecution does not contend Armentrout made a citizen's arrest.

The first question addressed by this court is whether a judge may take notice of a purported officer's police commission. The second question is whether the witness officer proves the existence of a police commission solely through his own testimony? Under the facts here, the court rules against the decision which concluded Armentrout was a peace officer under the auspices of § 172.350, RSMo., or a Boone County Deputy or a City of Columbia officer.

■ Normally, dispensing with proof covers only certain well-defined matters. The fact of whether or not an officer holds a commission as a peace officer with authority to arrest for a misdemeanor, does not present an appropriate issue for which the court may take notice. In fact, neither a trial nor an appellate court may even take notice of a municipal ordinance. *Boonville v. Martin,* 694 S.W.2d 295, 296 (Mo.App.1985); *Drury Displays, Inc. v. Board of Adjustment of the City of St. Louis,* 832 S.W.2d 330, 331 (Mo.App.1992).

■ Judicial notice is a rule of evidence which presumes as true the matter subject to notice and dispenses with the formal requirement to present proof—its conclusiveness "depends upon the certainty of the source of information", such as matters of common knowledge, laws of nature or of authority of state statutes. *Newson v. Kansas City,* 606 S.W.2d 487, 490 (Mo. App.1980). The officer's evidence of a special temporary commission which began on December 15 did not provide sufficient basis for the court to take notice Armentrout

held such a commission on August 31 of the same year, the date of the arrest. That university officers are all duly concurrently commissioned by the city is not a matter of such notoriety that it is a part of the "common knowledge of every person of ordinary intelligence." *English v. Old Am. Ins. Co.*, 426 S.W.2d 33, 41 (Mo.1968).

Without the benefit of judicial notice as a substitute for proof of Armentrout's special city commission, the question then becomes whether the testimony he held a special commission on a certain date, if believed by the trier of fact, is dispositive of the issue of the officer's authority to make such an arrest. As applicable here, § 544.216 RSMo. 1986 gives a "municipal law enforcement officer" the power to "arrest on view" for a misdemeanor. This law makes no mention of University of Missouri officers, and the record here, without benefit of taking notice, is bare of any showing any specific charter or ordinance provision giving Armentrout the power to make the arrest in this case. *Forste v. Benton*, 792 S.W.2d 910, 914 (Mo.App. 1990). That Armentrout had a commission months after this incident, at best would raise an inference he had a special commission prior to the commission date. But, the authority to arrest should not vest by inference. *Forste*, 792 S.W.2d at 915. *Forste* involved the power to arrest and the subsequent conditions for administrative suspension of driving privileges. The Southern District held a reserve officer of Springfield did not come within the definitions of a peace officer certified to make arrests, so the revenue director's action was without authority. The opinion went on to cite an attorney general's non-binding opinion to the effect that whether or not a person is a police officer depends on the person having been commissioned, and if there is no commission the person is not a police officer. *Id.*

The court rules the bare testimony of Armentrout did not supply the necessary proof to establish he held a city police commission on August 31, 1991, the day of the arrest. To let the witness who made the arrest, over the objection of the accused, testify as to the witness' commission, would run afoul of the best evidence and hearsay rules, and would allow the state's primary witness to render a self-serving and conclusory opinion.

Although arrests are ordinarily made by peace officers, *State v. Brinkley*, 189 S.W.2d 314, 321 (Mo.1945), a court cannot assume that conclusion in cases where the officer's authority is put in issue.

There is utterly no reason here to allow Armentrout to qualify as a University Police Officer empowered under the statute to make an arrest on a sidewalk not within or part of the campus. Other than Armentrout testifying he held a county deputy's commission, there is nothing to uphold such a legal conclusion.

It was only during trial the state sought to rely on a city commission to make the arrest. When the prosecutor discovered the witness had no certificate from the University or commission from the city or county, the state could have asked for a continuance. It chose not to do so. There is a total failure of evidence to show Armentrout had a peace officer's commission entitling him to make this arrest. Without that authority he had no power to conduct a search. The results of that search should not have been introduced in evidence. Not having the powers of arrest, the search and seizure of the altered drivers license was unlawful.

The judgment is reversed and the defendant Baris ordered discharged.

All concur.