STATE of Missouri, Plaintiff–
Respondent,

v.

Dorothy L. BREWER, Defendant–
Appellant.

No. 18576.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 1, 1993.

Motion for Rehearing or Transfer to
Supreme Court Denied Sept. 23, 1993.

Application to Transfer Denied
Oct. 26, 1993.

Roy W. Brown, Bruce B. Brown, Brown & Brown, Kearney, for defendant-appellant.

1. Statutory references are to RSMo 1986, and rule references are to Missouri Rules of Court

Ray Lee Caskey, Pros. Atty., Oregon County, Alton, for plaintiff-respondent.

MONTGOMERY, Judge.

After a trial without a jury, Defendant brought this appeal from her conviction of the class B misdemeanor of driving while intoxicated, § 577.010.[1] Paraphrased, her points relied on allege (1) her arrest was unlawful because the arresting officer was a noncertified reserve officer without authority to arrest under § 590.100 to § 590.180, and (2) the State failed to prove she operated a motor vehicle while intoxicated by failing to show she did not consume alcoholic beverages between the time of the stop and the taking of the chemical test.

In a nonjury case, the trial court's findings have the force and effect of a jury verdict. Rule 27.01(b). Therefore, we review this case as though a jury had returned a verdict of guilty, and the judgment will be affirmed if there is any substantial evidence to support the trial court's findings. *State v. Giffin*, 640 S.W.2d 128, 130 (Mo.1982). We accept as true all the evidence tending to prove Defendant's guilt and all inferences from the evidence that are favorable to the State, disregarding contrary evidence and inferences. *Id.*

Viewed in that light, the evidence establishes that on July 3, 1991, about 10:30 p.m. Frank Bernard, a reserve deputy sheriff for Oregon County, was traveling north on Highway 63 between Thayer and Koshkonong. Bernard was driving his private vehicle. Near the location of the "Golden Nugget or Anna's Bar" Bernard saw a Ford pickup pull out into the highway in front of a tractor-trailer unit. The tractor-trailer was forced to pass the Ford pickup to avoid a collision. Suspicious of the "possibility of a DWI," Bernard followed the pickup.

After obtaining the license number of the pickup, Bernard "backed off" and continued to follow the possible offender. Bernard followed the pickup about four miles, observing that it crossed "the center line three times

(1993), unless otherwise indicated.

and the right line two times." Eventually the pickup turned onto Z Highway where Bernard turned on his red lights, causing the pickup to stop and pull off the road.

Bernard approached the driver's side of the pickup and found Defendant to be the driver. Upon Bernard's request, she produced her driver's license. After Bernard detected an odor of intoxicants on Defendant's breath, he ran his flashlight through the vehicle, taking "just a casual look of the inside," and saw no containers or coolers. Bernard informed Defendant that she was under arrest for driving while intoxicated and read the *Miranda* warnings to her.

Bernard then contacted Deputy Sheriff Stairs to transport Defendant to the sheriff's office. While waiting about an hour for Stairs to arrive, Bernard generally waited by the passenger door of his vehicle, parked behind the pickup, with the motor running and the headlights on. Defendant waited for the most part in the driver's seat next to her passenger.

During the wait Defendant exited the pickup two or three times, once requesting a reason for the delay. Bernard observed that her balance, walking and turning was only fair, her speech was coherent, and her ability to follow instructions was good.

Upon his arrival at the scene, Deputy Stairs requested Defendant to perform certain field sobriety tests. When Defendant was directed to lean her head back, extend both arms to her side and touch her nose with her index fingers, she stumbled. Eventually, Deputy Stairs transported Defendant to the sheriff's office in Alton where her breathalyzer test produced a result of ".11."

At trial, Defendant testified she consumed "two beers and a drink of whiskey" while waiting inside the pickup. Defendant claimed the interior of the pickup contained a six-pack of beer and a fifth of whiskey. Bernard testified in rebuttal that he did not "believe she took a drink" while waiting in the pickup. Due to the positioning of the pickup, Bernard stated he could have ob-

served Defendant take a drink had she done so. However, Bernard could not recall if the back window of the pickup was tinted. Concerning the continuity of his observation of Defendant, this exchange occurred:

Q. [Prosecutor] One other thing, did—At the point you stopped her until she performed a breathalyzer, did you have—have her under your observation?

A. [Bernard] Part of the time she was in the cab of the pickup, sir.

Q. [Prosecutor] Okay. But did you observe her?

A. [Bernard] Yes, sir.

■ Defendant's first point alleges Frank Bernard was a reserve officer and lacked authority to arrest Defendant because he was not certified as required by the provisions of §§ 590.100 to 590.180, RSMo Supp. 1988.[2] As a result, Defendant argues her "arrest was invalid, the motions to dismiss and suppress should have been sustained, and Defendant should be discharged."

Defendant relies on *Forste v. Benton*, 792 S.W.2d 910 (Mo.App.1990), and *Baris v. State*, 846 S.W.2d 764 (Mo.App.1993). In *Forste*, this Court held that "the General Assembly of Missouri intended that reserve officers without certification have no authority to arrest." *Id.* at 915. *Baris* held that an officer of the University of Missouri Police Department had no authority to arrest off campus, and lacking that authority, a subsequent search and seizure was unlawful. However, for reasons which follow, neither *Forste* nor *Baris* forces the result which Defendant seeks.

Both at the close of the State's evidence and all the evidence Defendant made an oral "motion to dismiss" because Reserve Officer Bernard lacked the necessary certification to arrest. As we understand Defendant's position, the State was required to prove Bernard had the authority to arrest Defendant in order to make a submissible case of driving while intoxicated. We disagree.

**2.** The State does not argue Deputy Bernard was certified as a "peace officer" as required by these statutes.

■ Whether Bernard had the authority to arrest Defendant need not be decided to dispose of this point. Even assuming Bernard lacked authority to arrest, Defendant's position is untenable because an illegal arrest does not void a subsequent conviction under the facts of this case. Numerous cases support this view.

In *State v. Malady,* 672 S.W.2d 171 (Mo. App.1984), defendant, relying on Rule 22.06, claimed his arrest was illegal because he was held in custody more than twenty hours before a warrant was obtained. We said, "These arguments are without merit. In the absence of circumstances not present here, '[a]n illegal arrest or detention does not void a subsequent conviction.' *State v. Reding,* 634 S.W.2d 552, 553 (Mo.App.1982); *State v. Donnell,* 387 S.W.2d 508 (Mo.1965)." *Id.* at 173. A similar contention was rejected in *State v. Taylor,* 778 S.W.2d 276 (Mo.App. 1989), where the Court held, "Furthermore, even if appellant had been detained illegally, that would not void his subsequent conviction." *Id.* at 281. *See State v. Harding,* 734 S.W.2d 871, 874 (Mo.App.1987), and *State v. Bannister,* 680 S.W.2d 141, 144 (Mo. banc 1984).

In *State v. Taylor,* 630 S.W.2d 95 (Mo.App. 1981), defendant claimed the victim's identification testimony should have been suppressed because of defendant's illegal arrest. The Court said, "Even if we were to hold the arrest improper, such an illegal arrest would not render inadmissible identification testimony arising from the ensuing lineup. The defendant's presence cannot be assailed as the fruit of an illegal arrest." *Id.* at 96 (citations omitted). *See State v. Ford,* 677 S.W.2d 352, 354 n. 2 (Mo.App.1984), and *State v. Berry,* 609 S.W.2d 948, 952 n. 3 (Mo. banc 1980).

■ As illustrated by *Taylor,* Defendant's intoxicated driving cannot be assailed as the fruit of an illegal arrest. The remedy for an illegal arrest is the suppression of evidence obtained as a result of the arrest. *State v. Vinzant,* 716 S.W.2d 367, 370 (Mo.App.1986). Point I is rejected.

■ Defendant's last point is an attack on the sufficiency of the State's evidence. De-fendant claims the evidence fails to show she was intoxicated at the time she operated the motor vehicle due to her alleged consumption of intoxicants after the stop.

■ Defendant correctly asserts the State was required to prove she was intoxicated when she was driving. *State v. Davison,* 668 S.W.2d 252, 254 (Mo.App.1984). However, Defendant fails to recognize that the trial court was not obliged to believe her testimony on consumption of intoxicants after the stop. In a court-tried criminal case, determination of credibility of witnesses is a matter for the trial court, and it is not within the province of an appellate court to pass on their credibility. *State v. Wilson,* 846 S.W.2d 796, 798 (Mo.App.1993).

Clearly, the trial court disbelieved Defendant's testimony in view of the State's evidence of her erratic driving prior to the stop and the odor of intoxicants on her breath at the time of the stop. Furthermore, the trial court had evidence that Bernard shined his flashlight inside the pickup and saw no coolers or containers (which could have concealed intoxicants) and that Bernard never saw Defendant drink anything while he remained in a position to do so. This evidence allowed the trial court to infer either no intoxicants were available to Defendant or Defendant drank no intoxicants or both such propositions.

The instant case is factually unlike the two cases relied upon by Defendant. In both *State v. Dodson,* 496 S.W.2d 272 (Mo.App. 1973), and *State v. Liebhart,* 707 S.W.2d 427 (Mo.App.1986), each defendant was involved in a one car accident without any witnesses. Sometime later each defendant was found in an intoxicated condition. Each conviction was reversed because the element of intoxication while operating an automobile was not shown by evidence of defendants' intoxication at a later time.

Since the trial court disbelieved Defendant's testimony, we hold the trial court's finding that Defendant was intoxicated while operating the pickup was supported by substantial evidence. In addition to the breathalyzer test, other evidence of intoxication while driving was Defendant's erratic driv-

ing, the odor of intoxicants on her breath, her lack of good balance in walking, and her inability to properly perform a field sobriety test. Such evidence of intoxication has been held to be sufficient to support the verdict. *State v. Burris,* 729 S.W.2d 661, 663 (Mo. App.1987).

The judgment is affirmed.

PARRISH, C.J., and SHRUM, J., concur.

