Paul Christopher BARISH, Appellant,

v.

DIRECTOR OF REVENUE, State of Missouri, Respondent.

No. WD 47601.

Missouri Court of Appeals, Western District.

March 22, 1994.

Danieal H. Miller, Danieal H. Miller, P.C., Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen.,

Mo. Dept. of Revenue, Jefferson City, for respondent.

Before BERREY, P.J., and
BRECKENRIDGE and SMART, JJ.

BRECKENRIDGE, Judge.

Paul Christopher Barish appeals the judgment of the trial court affirming the determination of the Director of Revenue to suspend or revoke his driver's license under § 302.-505, RSMo 1986.[1] The action of the Director resulted from Barish's arrest upon probable cause to believe that he was driving while his blood alcohol level was thirteen-hundredths of one percent or more. Mr. Barish contends on appeal that the trial court erred in sustaining the suspension or revocation because the Director of Revenue failed to prove by competent and substantial evidence (1) that Mr. Barish was arrested by a law enforcement officer with the power and duty to arrest; (2) that a verified report of an arresting law enforcement officer was forwarded to the Department of Revenue; and (3) that the officer who arrested Mr. Barish had probable cause to make the arrest. Mr. Barish also alleges (4) that the trial court erred in admitting the results of a breathalyzer test. The judgment is affirmed.

At approximately 4:00 a.m. on March 6, 1992, Roger Schlude, a University of Missouri Police Department cadet, observed a blue Blazer stalled at the intersection of Maryland and Kentucky Avenues on university property in Columbia, Missouri. Cadet Schlude immediately notified the university police department dispatcher and continued to watch the automobile. After about five minutes, the driver of the stalled vehicle was able to get the car started, and the car continued southward on Maryland. Cadet Schlude followed the vehicle to Laws Hall, a university dormitory, where he observed the vehicle being driven erratically, hitting the bumper as it pulled into the fire lane of the building. Once parked, the driver got out of the car and began unloading passengers and belongings from the vehicle. Cadet Schlude approached the driver while the driver's back was turned towards him and asked the driver "if everything was okay with his vehicle."

The driver responded, "Fine." As he was standing near the driver's side door, Cadet Schlude smelled the odor of intoxicants coming out of the car. Cadet Schlude then left the vehicle and made a general announcement to the dispatcher about the vehicle and the odor of intoxicants coming from the automobile.

While on duty March 6, 1992, as a University of Missouri police officer, Kee Groshong received a dispatch report of a stalled vehicle in the intersection of Maryland and Kentucky. Finding no vehicles at the intersection, Officer Groshong began checking the whole area south around the dormitories for the automobile, which had been described to him by the dispatcher as a blue Bronco or Blazer. The officer located the vehicle in a university parking lot. The car was parked with the doors open, and several people were standing around it. After about five minutes, some of the people got back inside the car and the car began moving northbound through the parking lot. Officer Groshong continued to follow the automobile because, as he testified, "[t]he vehicle matched the description of one given out for erratic driving and stalled in the intersection. I wanted to see if it, indeed, was driving erratically." The car left the parking lot, travelling north through a tunnel going underneath Stadium Boulevard and eventually turning back onto Maryland. The vehicle proceeded northbound on Maryland, stopping at the stop sign at the intersection of Maryland and Kentucky and then turning west onto Kentucky. The automobile moved west on Kentucky until it reached Providence Road. At the intersection of Kentucky and Providence, the car turned south onto Providence.

Officer Groshong testified that from the time he began following the car until the car reached Providence Road, he observed no traffic violations and had no cause to stop the vehicle. While he was following the car on Providence Road, however, he determined by pacing the vehicle for approximately two-tenths of one mile that the car was exceeding

1. All statutory citations are to Revised Missouri Statutes 1986, unless otherwise indicated. Effective July 1, 1992, § 302.505 was amended to lower the blood alcohol level triggering suspension or revocation from thirteen-hundredths to ten-hundredths of one percent. Section 302.505, RSMo Cum.Supp.1993.

the speed limit of 50 miles per hour by 5 miles per hour. The officer stopped the vehicle on a state highway with university property on either side and asked the driver, who the officer identified at trial as Mr. Barish, for his license. At that time, Officer Groshong smelled the odor of intoxicants coming from the interior of the automobile and asked Mr. Barish to step out of the car. Officer Groshong noticed that Mr. Barish had bloodshot eyes and was "walking in a swaying sort of manner." The officer asked Mr. Barish to execute several field sobriety tests. Based on Mr. Barish's poor performance of these tests and the officer's general observations of him, the officer opined that Mr. Barish was intoxicated.

After placing Mr. Barish under arrest for driving while intoxicated in violation of § 577.010, Officer Groshong took Mr. Barish to the Columbia Police Department, where he asked Mr. Barish to take a breath analysis test. The breathalyzer test showed that Mr. Barish had a blood alcohol content of 0.178 percent.

The Director of Revenue subsequently suspended or revoked[2] Mr. Barish's driver's license under § 302.505 based upon his arrest for driving with a blood alcohol level in excess of thirteen-hundredths of one percent. Mr. Barish then filed a petition for a trial de novo pursuant to § 302.535 which the Circuit Court of Boone County granted. After the trial de novo, the circuit court affirmed the Director of Revenue's order of suspension or revocation. Mr. Barish's motion to amend the judgment was denied. Mr. Barish now appeals the judgment of the trial court.

 Review of the trial court's judgment must be made in accordance with the dictates of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Kimber v. Director of Revenue*, 817 S.W.2d 627, 629 (Mo.App.1991). The decision of the trial court must be affirmed on appeal unless there is no substantial evi-

dence to support the decision, the decision is against the weight of the evidence, or the decision erroneously declares or applies the law. *Id.* at 629–30. This court will accept as true "the evidence supporting the circuit court's judgment, as well as all reasonable inferences drawn from such evidence," and will disregard all contrary evidence and inferences. *Id.* at 630.

I.

 Mr. Barish alleges as his first point on appeal that the trial court erred in sustaining the suspension or revocation of his driver's license because the Director of Revenue failed to prove by competent and substantial evidence that Mr. Barish was arrested by a law enforcement officer with the power and duty to arrest. Mr. Barish argues that Officer Groshong was not a law enforcement officer for purposes of §§ 302.-505 and 302.510,[3] that the officer acted beyond his jurisdiction and without the power and duty to arrest him for driving while intoxicated, and that, as a result, his arrest was invalid.

Chapter 302, under which Mr. Barish's license was revoked or suspended, does not specify the qualifications a law enforcement official must possess in order for the arrest to be the basis for a suspension or revocation under § 302.505. Section 544.216, which lists in general those persons who may arrest on view without a warrant, fails to include University of Missouri police officers as having the power to arrest. However, § 544.216 does provide that "[t]he power to arrest authorized by this section is in addition to all other powers conferred upon law enforcement officers, and shall not be construed so as to limit or restrict any other power of a law enforcement officer."

Chapter 577, under which Mr. Barish was arrested, provides that a "law enforcement

---

**2.** It cannot be discerned from the record on appeal whether the action taken by the Director was to suspend or to revoke Mr. Barish's driver's license. However, the specific nature of the Director's action is of no significance to the issues on appeal.

**3.** Section 302.510 was amended effective July 1, 1992, to substitute "ten-hundredths" for "thirteen-hundredths" and to delete subsection 4 which did not allow suspension or revocation based upon an arrest made at a checkpoint or roadblock if there was not probable cause for the initial stop of the vehicle. Section 302.510, RSMo Cum.Supp.1993.

officer" may make a warrantless arrest for a violation of § 577.010 if the arresting officer has reasonable grounds to believe the person to be arrested has violated the section. Section 577.039. Chapter 577 defines the terms "law enforcement officer" and "arresting officer" to include the definition of "law enforcement officer" contained in § 556.061(17), RSMo Cum.Supp.1993. Section 577.001.3. Section 556.061(17), RSMo Cum.Supp.1993, provides that "law enforcement officer" means in part "any *public servant* having both the power and duty to make arrests for violations of the laws of this state ..." (emphasis added).

Officer Groshong was a public servant with the power and duty to make arrests. A "public servant" is "any person employed in any way by a government of this state who is compensated by the government by reason of his employment." Section 556.061(23), RSMo Cum.Supp.1993. Officer Groshong was a public servant by way of his employment as a University of Missouri police officer. Section 172.350 authorizes the curators of the University of Missouri to appoint "watchmen." Pursuant to § 172.020, the university is a body politic, known by the name of "The Curators of the University of Missouri." It is a public corporation, *Todd v. Curators of University of Missouri,* 347 Mo. 460, 464, 147 S.W.2d 1063, 1064 (Mo.1941)[4], and its governing body, the Board of Curators, is a separate entity given the status of a "public governmental body." *Tribune Pub. Co. v. Curators of Univ. of Mo.,* 661 S.W.2d 575, 584 (Mo.App.1983). Officer Groshong, therefore, was employed by an institution of the state government and compensated by the government for his employment services.

Subsection 1 of § 172.350 defines the role of University of Missouri watchmen to be "to protect property and to preserve peace and good order in the public buildings and upon the campuses, grounds, and farms, over which they may have charge or control." Section 172.350.1. Subsection 2 of the stat-ute enables the university to give each watchman a "certificate of appointment," which "shall clothe him with the same power to maintain order, preserve peace and *make arrests* as is now held by peace officers." Section 172.350.2 (emphasis added). This duty to preserve peace upon the campuses and power to make arrests given to university watchmen necessarily includes the duty and power to make arrests for the violation of § 577.010 as provided in § 577.039.

Officer Groshong testified that he was a commissioned officer with the duty to uphold the laws of the state of Missouri. He also stated that he was certified as a law enforcement officer in the state of Missouri and that he was authorized to patrol the campus of the University of Missouri. Officer Groshong made each of these statements without objection from Mr. Barish. It was not until after Officer Groshong's testimony that Mr. Barish made any objection to Officer Groshong's authority to arrest. When the Director of Revenue attempted at the close of the testimony of Columbia Police Department Officer Richard Lake to introduce into evidence exhibits related to Mr. Barish's breath analysis test results,[5] Mr. Barish made the following objection:

> I'm going to object to this and claim an underlying premise to motion for judgment, seeing as everything is going to be based on the fact that none of this is the result of an arrest by a person meeting the definition of a law enforcement officer for purposes of Chapter 577, inasmuch as the arresting officer was a University Police Department officer. That, then, makes everything else after that immaterial and lack of foundation necessary for admission.

Mr. Barish did not introduce any evidence to contradict Officer Groshong's claim of authority.

As the Missouri Supreme Court found in *Sellenriek v. Director of Revenue,* 826 S.W.2d 338, 339 (Mo. banc 1992), "[w]hen

---

4. *Todd* was overruled on other grounds by *Jones v. State Highway Commission,* 557 S.W.2d 225 (Mo. banc 1977).

5. The exhibits offered into evidence consisted of the permit and maintenance report of the officer responsible for maintaining the breath analysis machine, the permit of the officer who actually administered the breath test to Mr. Barish, the checklist completed by the administering officer, and Mr. Barish's test result card.

evidence of one of the issues in the case is admitted without objection, the party against whom it is offered waives any objection to the evidence, and it may be properly considered even if the evidence would be excluded by a proper objection." By failing to object when Officer Groshong testified as to his certification to arrest Mr. Barish for driving while intoxicated, Mr. Barish waived any objection to the officer's testimony. The trial court could properly consider Officer Groshong to be certified and thereby authorized to arrest Mr. Barish for the offense he was arrested.

Mr. Barish's reliance on *Baris v. State*, 846 S.W.2d 764 (Mo.App.1993) and *Forste v. Benton*, 792 S.W.2d 910 (Mo.App.1990) is misplaced. In *Baris*, the defendant made a timely and proper objection to the arresting officer's testimony as to his authority to arrest.[6] *Baris*, 846 S.W.2d at 765. In *Forste*, the evidence revealed that the arresting officer, a reserve officer of a municipal police department, possessed no certification at all. *Forste*, 792 S.W.2d at 911. In the instant case, Mr. Barish failed to make a timely objection to Officer Groshong's testimony concerning his certification, and the uncontroverted evidence at trial was that the officer was certified and possessed the power to arrest Mr. Barish.

■ Mr. Barish next claims that the arrest was illegal because Officer Groshong was outside his territorial jurisdiction since the arrest did not occur on university property. The arrest occurred on a state highway with university property on both sides. It is a matter of first impression whether a university police officer has authority to make an arrest for a public safety offense on a state highway bisecting university property. The issue will not be decided, however, because the illegality of an underlying arrest does not impair the admissibility of evidence relating to the arrest in civil proceedings to suspend or revoke a driver's license pursuant to §§ 302.500–.540. *Kimber*, 817 S.W.2d at 631–32; *James v. Director of Revenue*, 767 S.W.2d 604, 611–12 (Mo.App.1989). The rule requiring exclusion of evidence obtained in an illegal or unethical manner is inapplicable to civil proceedings. *Kimber*, 817 S.W.2d at 632. Point one is denied.

## II.

■ As his second point on appeal, Mr. Barish contends that the trial court erred in sustaining the suspension or revocation because the Director of Revenue failed to prove by competent and substantial evidence that a verified report of an arresting law enforcement officer was forwarded to the Department of Revenue.[7] As Mr. Barish notes, § 302.510.1 provides that a law enforcement officer who arrests a person for violating § 577.010 "shall forward to the department a verified report of all information relevant to the enforcement action."[8] The Director of

---

6. *Baris* involved an arrest of a defendant in Columbia, Missouri, by a University of Missouri Police officer for the misdemeanor of knowingly possessing an altered driver's license in violation of § 302.220, RSMo Cum.Supp.1992. Mr. Baris's attorney objected when the prosecution attempted to question the officer about a special city commission authorizing the officer to make arrests outside the university campus which the officer claimed he possessed at the time of the arrest but which the officer could not produce at trial. Holding that the officer's testimony that he had a city commission was insufficient to establish that he was, in fact, empowered to make an arrest outside the campus, the court in *Baris* noted "[t]o let the witness who made the arrest, *over the objection of the accused*, testify as to the witness' commission, would run afoul of the best evidence and hearsay rules, and would allow the state's primary witness to render a self-serving and conclusory opinion." *Baris*, 846 S.W.2d at 766 (emphasis added).

7. Although Mr. Barish contends that the record on appeal "is devoid of any evidence" that Officer Groshong submitted a report to the Department of Revenue, Mr. Barish did state in his Civil Case Information Form Supplement sent to this court that "Director of Revenue made decision to suspend or revoke Petitioner's drivers [sic] license upon receipt of report from University of Missouri police officer of arrest by him of Petitioner for violation of 577.010 RSMo."

8. The arresting officer must include in the report the following items:

 [I]nformation which adequately identifies the arrested person, a statement of the officer's grounds for belief that the person violated section 577.010 or 577.012, RSMo, or a county or municipal ordinance prohibiting driving while intoxicated or a county or municipal alcohol related traffic offense, a report of the results of any chemical tests which were conducted, and

Revenue's determination of whether to suspend or revoke a person's driver's license for driving while intoxicated is to be based on the arresting officer's report. Section 302.-505.2.

In the instant case, Officer Groshong testified that he had interviewed Mr. Barish as a part of his "police report" and that Mr. Barish's answers were included in the interview section of the "State of Missouri Alcohol Influence Report" on Mr. Barish. Neither party, however, asked Officer Groshong if he had forwarded the report required by § 302.-510 to the Department of Revenue, and the officer did not testify whether or not he had sent the Department such a report. The only other testimony regarding a report was that of Officer Lake, who stated, "I filled out an operator's influence report. I don't know if it was submitted to the Department of Revenue or not. I submitted it to Officer Groshong."

Mr. Barish argues that receipt by the Department of Revenue of the verified officer's report provided for in § 302.510 is a jurisdictional prerequisite to any affirmation by the circuit court on trial de novo of the Director's decision to suspend or revoke a driver's license under § 302.505. However, as this court indicated in *Leach v. Director of Revenue*, 705 S.W.2d 125, 127 (Mo.App.1986), deficiencies in the verified report may be fatal to a suspension or revocation at the administrative review level, but "[n]o such deficiency ... can affect the quality of proof at the de novo trial." If a suspension is based on an arrest for a violation of § 577.010, the state can meet its burden of proof on a trial de novo if it presents testimony establishing that (1) "the motorist was arrested [upon probable cause] for a violation of § 577.010," and (2) "the person's blood alcohol concentration was .13 percent or more." *Id.* "Proof of the substance of these requirements by evidence at trial replaces the reporting requirements of § 302.510 *which cease to be relevant* once the administrative phase of the suspension or revocation proceeding has passed." [9] *Id.* (emphasis added). The eastern district of this court recently reached the same conclusion in *Lawrence v. Director of Revenue*, 863 S.W.2d 10, 11 (Mo.App.1993). Because proof of the submission of a report by Officer Groshong to the Department was irrelevant at the trial de novo phase, the Director will not be faulted for failing to provide such proof to the circuit court. Point two is denied.

### III.

■ Mr. Barish claims as his third point on appeal that the trial court erred in sustaining the suspension or revocation because the Director of Revenue failed to prove by competent and substantial evidence that Officer Groshong had probable cause to arrest Mr. Barish. Mr. Barish argues that Officer Groshong's pace and preliminary investigation did not provide a reliable basis for determining Mr. Barish's speed and that "there was no observed traffic offense or unusual driving by [Mr. Barish]" and nothing to associate the smell of intoxicants with him.

■ A law enforcement officer has probable cause to arrest a person for an alcohol-related traffic offense when (1) the officer observes a traffic violation or the unusual operation of a motor vehicle and (2) indications of alcohol consumption are noted when the motorist is stopped. *Wallace v. Director of Revenue*, 754 S.W.2d 900, 902 (Mo.App. 1988) (citing *Schranz v. Director of Revenue*, 703 S.W.2d 912, 913 (Mo.App.1986)). The specific probable cause required to arrest for driving while intoxicated may be developed after a driver is otherwise properly stopped. *Wallace*, 754 S.W.2d at 902 (citing *Aron v. Director of Revenue*, 737 S.W.2d 718, 719 (Mo. banc 1987)).[10]

a copy of the citation and complaint filed with the court.
Section 302.510.1.

9. The *Leach* decision does note that the report may still be used at the trial de novo as a basis for cross-examination and impeachment. *Leach*, 705 S.W.2d at 127.

10. Section 302.510.4, RSMo 1986, in effect at the time of Mr. Barish's arrest, did not allow an administrative suspension or revocation based upon an arrest for an alcohol-related traffic offense made at a checkpoint or roadblock, unless the probable cause to arrest existed prior to the stop. Effective July 1, 1992, Subsection 4 was deleted from the statute.

Officer Groshong testified that he followed the car driven by Mr. Barish because "[t]he vehicle matched the description of one given out for erratic driving and stalled in the intersection." An officer has the right to stop a car for erratic driving, *State v. McMahan,* 583 S.W.2d 540, 543 (Mo.App.1979). A police radio dispatch can be relied upon to establish probable cause to stop a motor vehicle if the evidence at trial confirms that the radio dispatch was issued on the basis of reasonable suspicion. *State v. Franklin,* 841 S.W.2d 639, 645 (Mo. banc 1992). In the case at bar, the basis of reasonable suspicion was established by the testimony of the officer who was the source of the radio dispatch, Cadet Schlude, that he personally observed a blue Blazer being driven in an erratic manner and by Mr. Barish's admission that he was driving the blue Blazer at the time it was observed by Cadet Schlude. Officer Groshong, despite his testimony to the contrary, had probable cause to stop the vehicle driven by Mr. Barish immediately after he located it.

In addition, Officer Groshong had probable cause to stop Mr. Barish for driving at an excessive speed. Although Mr. Barish attacks the validity of Officer Groshong's determination of his speed by pacing Mr. Barish's automobile, there was sufficient evidence at trial to support the trial court's finding of probable cause to stop for speeding in excess of the speed limit of 50 miles per hour. Mr. Barish testified that, "I recalled trying to stay around 45 miles an hour. And then, as I reached the bottom of the hill, it turned to 55. But I don't ever recall going over 55 or over 50." His plea of guilty to the criminal charge of careless and imprudent driving by driving at an excessive speed was also evidence from which the trier of fact could find that he admitted to driving at an excessive speed. *Ferguson v. Boyd,* 448 S.W.2d 901, 903 (Mo.1970).

■ Once he had properly stopped Mr. Barish, Officer Groshong testified that he could smell the odor of intoxicants coming from the interior of the automobile. Although, as Mr. Barish notes, Officer Groshong could not at once identify from which person or persons the odor was emanating, the fact that the officer could smell intoxicants coming from the car provided him with a "new factual predicate for reasonable suspicion" to allow the officer to continue his investigation by asking Mr. Barish to exit the car. *See State v. Hyland,* 840 S.W.2d 219, 221 (Mo. banc 1992) ("[I]f the detention extends beyond the time reasonably necessary to effect its initial purpose, the seizure may lose its lawful character (assuming no new factual predicate for reasonable suspicion is found during the period of the lawful seizure)"). Mr. Barish's "swaying" gait, his bloodshot eyes, and his poor performance of several field sobriety tests afforded Officer Groshong sufficient indication of alcohol consumption by Mr. Barish to give the officer probable cause to arrest him for driving while intoxicated. *Wallace,* 754 S.W.2d at 902. Point three is denied.

## IV.

■ Mr. Barish maintains as his fourth point on appeal that the trial court erred in overruling his objection to the admission of his breathalyzer test results. He asserts that the Director of Revenue failed to lay a proper foundation for the admission of the results and that as a consequence, the Director failed to meet the burden of proving that the alcohol content of Mr. Barish's blood exceeded thirteen-hundredths of one percent as required by § 302.505.1.

The foundational prerequisites for the admission of breathalyzer test results under the regulations of the Department of Health are: "(1) the test was performed by following the techniques and methods approved by the Department of Health; (2) the machine operator held a valid permit; and (3) the equipment and devises used to administer the test were approved by the Department of Health." *Reed v. Director of Revenue,* 834 S.W.2d 834, 836 (Mo.App.1992). *See also Sellenriek,* 826 S.W.2d at 340–41. Mr. Barish argues on appeal that the Director of Revenue failed to lay a proper foundation for the admission of his breath analysis test results because the Director's evidence reflected a deviation from the approved methods and techniques for maintaining the machine and administering the test. During the

trial, however, when the Director offered into evidence the permit and maintenance report of the officer responsible for maintaining the breath analysis machine, the permit of the officer who actually administered the breath test to Mr. Barish, the checklist completed by the administering officer, and Mr. Barish's test result card, the only objection Mr. Barish made was that referenced in point one of this appeal:

I'm going to object to this and claim an underlying premise to motion for judgment, seeing as everything is going to be based on the fact that none of this is the result of an arrest by a person meeting the definition of a law enforcement officer for purposes of Chapter 577, inasmuch as the arresting officer was a University Police Department officer. That, then, makes everything else after that immaterial and lack of foundation necessary for admission.

Proof of compliance with the regulations of the Department of Health only becomes a concern if a proper and timely objection to the admission of the blood alcohol analysis is made. *Diehl v. Director of Revenue*, 836 S.W.2d 94, 96 (Mo.App.1992). A proper objection to evidence is one that is "sufficiently clear and definite so that a court will understand the reason therefor; an objection encompassing a broad range of situations that are not readily apparent does not preserve error." *Reed*, 834 S.W.2d at 836 (citing *State v. Bartholomew*, 829 S.W.2d 50, 53 (Mo.App.1992)). Because of the detailed proof required to lay the proper foundation for the admission of breathalyzer test results, an objecting party must specify to the court and opposing counsel in what manner the test was improperly administered. *Bartholomew*, 829 S.W.2d at 53. A general "lack of foundation" objection will not preserve alleged errors in the admission of breathalyzer test results because that objection by itself fails to direct the trial court's attention to the specific foundational element considered deficient. *Stewart v. Director of Revenue*, 702 S.W.2d 472, 476 (Mo. banc 1986).

Mr. Barish's objection to the admission of his test results based upon his claim that Officer Groshong did not have the authority to arrest him is untimely, as is noted in this court's discussion of his first point on appeal, and is inadequate to preserve for review any claim that the test was not administered or the testing machine was not maintained in accordance with the regulations of the Department of Health. *See Bartholomew*, 829 S.W.2d at 53. Nor did Mr. Barish preserve his claim regarding the administration of the test or maintenance of the machine by stating in his objection that the arrest by Officer Groshong "makes everything else after that immaterial and lack of foundation necessary for admission." *Stewart*, 702 S.W.2d at 476.

By failing to make a timely and proper objection to the admission of his breathalyzer test results, Mr. Barish failed to preserve any error concerning the admission for this court's review. *Diehl*, 836 S.W.2d at 96. Point four is denied.

The judgment of the trial court is affirmed.

All concur.