**William COOLEY, Respondent,**

v.

**DIRECTOR OF REVENUE, STATE of MISSOURI, Appellant.**

No. 77445.

Supreme Court of Missouri,
En Banc.

April 25, 1995.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for appellant.

Eugene E. Coon, Jr., Thomas G. Lemley, Clayton, for respondent.

LIMBAUGH, Judge.

The Director of Revenue (Director) appeals the trial court's order reinstating William Cooley's driving privileges which had been suspended. The Court of Appeals, Eastern District, reversed and remanded for a new trial, and thereafter, this Court granted transfer. We now reverse and remand.

Officer Paul Wilson of the Town and Country Police Department arrested Cooley for driving while intoxicated (DWI) and subsequently administered a breathalyzer test. Pursuant to §§ 302.500–.540, RSMo 1994 [1], the Director suspended Cooley's driving privileges. The suspension was upheld after an administrative hearing, and Cooley then filed a petition for trial *de novo* in circuit court.

The trial court, after hearing the evidence, set aside the suspension, concluding that the Director failed to prove Officer Wilson's status as a certified peace officer and "Type III" permit holder. In an action to suspend driving privileges because of an arrest for DWI, the Director must prove that the arresting officer is certified under §§ 590.100–.150 as a peace officer. § 302.510.3; *Allen v. Director of Revenue*, 845 S.W.2d 724, 725 (Mo.App.1993). In addition, as the foundation for introduction of breathalyzer test results, the Director must prove that the officer operating the breathalyzer was a "Type III" permit holder, an officer certified in accordance with operating procedures promulgated by the Missouri Division of Health. § 577.020.3; *Miller v. Director of Revenue*, 719 S.W.2d 787, 790 (Mo. banc 1986).

---

1. All references are to RSMo 1994 as the statutes cited were not changed from RSMo Supp.1993.

At trial, the Director offered only Officer Wilson's oral testimony to establish that he was a certified peace officer and a Type III permittee. Cooley objected to the testimony on the grounds that the certificate and the permit would be the best evidence of those facts. The trial court sustained the objections but allowed the Director to make offers of proof. The first offer consisted of counsel's statement that Officer Wilson would respond "in the affirmative" when questioned whether he was a certified peace officer. On the second offer of proof, Officer Wilson testified himself that he was a Type III permittee. He also cited his permit number and stated that the permit was in effect at the time he administered the breathalyzer test to Cooley. He then detailed how he administered the test. To conclude, the Director offered the operational checklist and the "test strip" which indicated that Cooley had a blood alcohol content of .123%.

The Director contends that Officer Wilson's oral testimony to certification and Type III permittee status does not violate the best evidence rule and thus, the Director is not required to produce the actual certificate and permit to prove those facts. The Eastern District dealt with this exact issue in *Elliot v. Director of Revenue*, 882 S.W.2d 745, 747 (Mo.App.1994), and held that it was error to exclude the officer's testimony. We agree with the analysis and conclusion of that court.

There appear to be at least two misconceptions regarding the best evidence rule: 1) that every fact must be proved by the best evidence available to the exclusion of any other evidence; and 2) that whenever a fact is evidenced by a writing, the writing is the only evidence which may be admitted. Neither proposition is true.

In fact, the best evidence rule applies only when the evidence is offered to prove the terms or contents of a writing or recording. *State v. Curry*, 473 S.W.2d 747, 748–49 (Mo.1971). The principal reason for the rule is the danger of mistransmission of the contents of a writing when evidence other than the writing itself is offered for the purpose of proving its terms. *McCormick on Evidence* § 233 (4th ed. 1992). For example, the exact words used are critically important in the case of deeds, wills or contracts, where even a slight variation of those words may mean a great difference in the rights conferred under the document. *McCormick on Evidence* § 231 (4th ed. 1992).

On the other hand, proof of the mere existence, execution, delivery, or identity of a document is not considered proof of the terms of the document, and may be given without producing the original document or accounting for its absence. *McCormick on Evidence* § 233 (4th ed. 1992); 2 *Jones on Evidence* § 7:5 (6th ed. 1972). Furthermore, the rule does not become applicable simply because evidence is offered of facts which are also contained in a writing. *State v. Kirksey*, 727 S.W.2d 201, 203 (Mo.App.1987); *Jourdan v. Gilmore*, 638 S.W.2d 763, 770 (Mo.App. 1982). In other words, where the fact to be proved is evidenced in a writing but also exists independently of that writing, then both sources, oral and written, become primary evidence, and the best evidence rule is inapplicable. *State v. Curry*, 473 S.W.2d at 748–49. In that regard, the best evidence rule does not exclude evidence based on personal knowledge even if documents or other writings would provide some of the same information. *Aluminum Products Ent. v. Fuhrmann Tooling*, 758 S.W.2d 119, 122 (Mo.App.1988).

Although these rules appear to be straightforward, it is often difficult to determine whether the proof is solely of the terms and contents of a writing. In explaining the distinction to be made, *McCormick* states:

[T]here are certain writings which the substantive law, e.g., the Statute of Frauds, the parol evidence rule, endow with a degree of either indispensability or primacy. Transactions to which substantive rules of this character apply tend naturally to be viewed as written transactions, and writings embodying such transactions, e.g., deeds, contracts, judgments, etc., are universally considered to be within the [best evidence] rule when actually involved in the litigation. Contrasted with the above described types of writings are those, essentially unlimited in variety, which the substantive law does not regard as essential or primary repositories of the facts recorded. Writings of this latter sort may

be said merely to happen to record the facts of essentially nonwritten transactions. Testimony descriptive of nonwritten transactions is not generally considered to be within the scope of the [best evidence] rule and may be given without producing or explaining the absence of a writing recording the facts. Thus, evidence of a payment may be given without production of the receipt, or evidence of a marriage without production of the marriage certificate.

*McCormick on Evidence* § 233 (4th ed. 1992).

■ With this understanding, we conclude that the best evidence rule was misapplied. In doing so, we look to the purpose for which the evidence is offered. As stated earlier, § 302.510.3 requires that the arresting officer "has been certified," while § 577.020.3 requires that breathalyzer tests be performed "by a person possessing a valid permit." Although it is not clear from these statutes whether the proof to be made is the officer's actual possession of the document, or the process the officer undergoes to be certified or to obtain a Type III permit, the outcome is the same.

If the dispute concerns the possession of the certificate and permit by Officer Wilson, proof is of the existence and issuance of the documents, not their contents, and the best evidence rule does not apply. If the dispute concerns whether Officer Wilson was certified as a peace officer and a Type III permittee, proof is of facts that exist independently of the certificate and permit, and again, the rule does not apply. In sum, the certificate and permit merely record the facts of essentially nonwritten transactions. Therefore, Officer Wilson's testimony describing those transactions, based obviously on his personal knowledge, is not within the scope of the best evidence rule.

To the contrary, Cooley relies on *Baris v. State*, 846 S.W.2d 764, 766 (Mo.App.1993), in which the Western District held that the bare testimony of the arresting officer did not supply the necessary proof to establish the fact that he held a city police commission. *Baris* is distinguishable because it concerned the sufficiency of the oral testimony to establish the officer's commission, not the admissibility of the oral testimony. However, there is dictum in *Baris* to the effect that allowing the oral testimony to prove the certification would run afoul of the best evidence rule. *Baris*, 846 S.W.2d at 766. To that extent, *Baris* is overruled.

Apart from the best evidence issue, the trial judge stated that he did not believe Officer Wilson's testimony regarding his certification and Type III permittee status because he did not bring his certificate to court after learning that it was required in an earlier case. This finding, however, was based on events outside the record. Therefore, we do not defer to the trial court, but we rely instead on the uncontroverted offers of proof.

We hold that the trial court erred in excluding Officer Wilson's testimony regarding his peace officer certification and Type III permittee status. The judgment of the trial court is reversed and the cause is remanded for a new trial.

All concur.