

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

JANET PEREA AND MAV MIRFASIHI,)
                       )

      **Appellants,**       )

                       )

**v.**                  )       **WD86038**

                       )

**PROGRESSIVE NORTHWESTERN**   )
**INSURANCE COMPANY,**       )       **Filed: October 31, 2023**

                       )

      **Respondent.**     )

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
### THE HONORABLE JON E. BEETEM, JUDGE

### BEFORE DIVISION THREE: LISA WHITE HARDWICK, PRESIDING JUDGE,
### CYNTHIA L. MARTIN, JUDGE, AND ANTHONY REX GABBERT, JUDGE

Janet Perea and Mav Mirfasihi (collectively, "Appellants") appeal from the

summary judgment entered in favor of Perea's insurer, Progressive Northwestern

Insurance Company ("Progressive") on Appellants' petition for damages. Appellants

contend the circuit court erred in entering summary judgment because Progressive

breached its insurance contract with Perea by failing to timely pay the full amount of

personal injury protection benefits to her, and Progressive should have been required to

pay interest and attorney's fees as a penalty for its late payments. Appellants further

argue Progressive's payment of Perea's benefits to one of her medical providers was not

allowed under Missouri law and violated the attorney lien statute. For reasons explained herein, we affirm.

FACTUAL AND PROCEDURAL HISTORY

On April 12, 2019, Perea was in an automobile accident with a vehicle driven by T.H. Perea received medical treatment from Marvin's Midtown Chiropractic Clinic ("Marvin's") for her injuries. At the time of the accident, Perea, a Kansas resident, was insured by a Progressive Kansas auto policy. The personal injury protection ("PIP") coverage section of the policy stated, in pertinent part:

> If you pay the premium for this coverage, **we** will pay for **covered expenses**, in accordance with the Kansas Automobile Injury Reparations Act, incurred because of **bodily injury**:
>
> 1. caused by accident;
> 2. sustained by an **insured person**; and
> 3. arising out of the ownership, operation, maintenance or use of a **motor vehicle**.

The policy included PIP coverage for medical expenses in the amount of $4,500.

On April 15, 2019, Perea and Mirfasihi entered into an attorney-client contract in which Mirfasihi agreed to represent her with respect to the "rear-end collision and personal injury of [sic] on or about 4/12/19." In exchange, Perea agreed to pay Mirfasihi 45% "of all gross proceeds including future payments on any claims." On April 23, 2019, Perea completed, signed, and sent her application for PIP benefits to Progressive.

On May 9, 2019, Progressive received an assignment of benefits from Marvin's Midtown Chiropractic. The document, which was signed by Perea on April 18, 2019,

2

purported to assign to Marvin's Perea's right to make a claim for any benefits to which she was entitled under any insurance policy.

Around the same time, the Progressive employee who was handling Perea's PIP claim contacted American Family Insurance, T.H.'s insurance carrier, and confirmed that American Family had an open liability and bodily injury claim for this accident and that American Family was handling coverage and payment of Perea's medical expenses. Progressive then closed Perea's PIP claim.

On September 24, 2019, Progressive received a letter from Mirfasihi informing Progressive of his representation of Perea and demanding payment of Perea's PIP claim for $9,255.05, or the policy limits of $4,500, whichever was less. On October 31, 2019, Progressive issued payment in the amount of $2,102.25 to Marvin's pursuant to Perea's assignment of benefits.

On January 8, 2020, Progressive's supervisor of medical claims requested that Progressive issue a draft for $2,397.75, payable to "Janet Perea and Mirfasihi Law Offices." According to Progressive's IT Process Analyst Lead, Progressive issued and presented the draft the next day, January 9, 2020, to the United States Postal Service for mailing via first class mail to Mirfasihi's law office. Mirfasihi, however, never received this draft.

Appellants filed a petition for damages against Progressive in the Clay County Circuit Court. Perea asserted claims of breach of contract, tortious interference with a business expectancy and contract, and vexatious refusal to settle, while Mirfasihi asserted claims of violation of the attorney lien statute and tortious interference with a contract.

3

On Progressive's motion, the court ordered that Missouri's choice of law provisions required application of Kansas substantive law to Perea's breach of contract claim. The court also granted Progressive's motion for change of venue to the Cole County Circuit Court pursuant to Sections 375.1800 and 375.1803.[1]

After the case was transferred to Cole County, Appellants filed an amended petition for damages asserting the same claims. In her breach of contract claim, Perea alleged Progressive breached the insurance policy by failing to pay the full amount of the PIP benefits to her within 30 days after her September 24, 2019 written notice, as required by K.S.A. 40-3110(b). In her tortious interference with a business expectancy and contract claim, Perea alleged Progressive intentionally, maliciously, wantonly, and/or without justification or excuse induced and/or caused a breach in the business expectancy and/or attorney-client contract by disregarding her demand letter and partially paying Marvin's directly. In her vexatious refusal to settle claim, Perea alleged Progressive refused to compensate her for her full damages or up to its policy limits, and its refusal to pay was without reasonable cause. For his claims, Mirfasihi alleged Progressive violated Section 484.140, the attorney lien statute, by paying Marvin's directly without compensating him for his attorney lien. Mirfasihi further alleged Progressive's direct payment to Marvin's without paying his attorney lien directly caused Perea to breach her

_____

[1] All Missouri statutory references are to the Revised Statutes of Missouri 2016, as updated by the 2020 Cumulative Supplement. Under Section 375.1800.2, when a foreign insurance company such as Progressive does not maintain a registered agent or office in Missouri, it is deemed to reside in Cole County. Venue for actions against an insurer is in the county where the insurer resides, if, as in this this case, the insured was not a resident of Missouri at the time the insurance contract was issued. § 375.1803.1.

4

attorney-client contract, as she had agreed in the contract to pay Mirfasihi 45% of the gross proceeds of any PIP benefits recovered from Progressive.

Appellants filed a motion for partial summary judgment on Perea's breach of contract claim and Mirfasihi's violation of the attorney lien statute claim. Progressive filed a cross-motion for summary judgment on all claims. In addition to seeking summary judgment, Progressive's prayer for relief in its suggestions in support of its cross-motion stated, "Based on representations of [Appellants] that the PIP benefits check issued to Janet Perea and Mirfasihi Law Offices was never received, Defendant Progressive shall reissue the PIP benefits check in the amount of $2,397.75 to Janet Perea and Mirfasihi Law Offices and send same to Plaintiff Mirfasihi." While the parties' summary judgment motions were pending, Progressive delivered payment of $2,397.75 to Mirfasihi Law Offices on May 16, 2022. On December 27, 2022, the court denied Appellants' partial summary judgment motion and granted Progressive's summary judgment motion on all claims. Appellants appeal.

### STANDARD OF REVIEW

Appellate review of summary judgment is essentially *de novo. Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020). Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 74.04(c)(6). Where, as in this case, the movant is the defendant, the movant establishes the right to judgment as a matter of law by showing one of the following:

5

(1) facts negating any one of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able to—and will not be able to—produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support [its] properly pleaded affirmative defense.

*Roberts v. BJC Health Sys.*, 391 S.W.3d 433, 437 (Mo. banc 2013).

In determining whether the movant has met this burden, we review the summary judgment record in the light most favorable to the party against whom judgment was entered and accord that party the benefit of all reasonable inferences. *Green,* 606 S.W.3d at 116. We "do not weigh conflicting evidence or make credibility determinations." *Brentwood Glass Co. v. Pal's Glass Serv., Inc.*, 499 S.W.3d 296, 302 (Mo. banc 2016). "Instead, summary judgment tests 'simply for the existence, not the extent' of genuine issues of material fact." *Id.* (citation omitted). "A factual question exists if evidentiary issues are actually contested, are subject to conflicting interpretations, or if reasonable persons might differ as to their significance." *Id.* (citation omitted). "Only evidence that is admissible at trial can be used to sustain or avoid summary judgment." *Jones v. Union Pac. R.R. Co.*, 508 S.W.3d 159, 162 (Mo. App. 2016) (citation omitted). "Hearsay statements cannot be considered in ruling on the propriety of summary judgment." *Id.* (citation omitted).

The Supreme Court has adopted this description of the parameters of the record we review on summary judgment:

[1] Facts come into a summary judgment record *only* via Rule 74.04(c)'s numbered-paragraphs-and-responses framework. [2] Courts determine and review summary judgment *based on that Rule 74.04(c) record, not* the whole trial court record. [3] Affidavits, exhibits, discovery, etc. generally

6

play only a secondary role, and then only as cited to support Rule 74.04(c) numbered paragraphs or responses, *since parties cannot cite or rely on facts outside the Rule 74.04(c) record.* [4] Summary judgment rarely if ever lies, or can withstand appeal, unless it flows as a matter of law from appropriate Rule 74.04(c) numbered paragraphs and responses *alone.*

*Green*, 606 S.W.3d at 117-18 (quoting *Jones*, 508 S.W.3d at 161). As the Court noted in *Green*, when read together, these principles "require a court to 'determine whether *uncontroverted* facts established via Rule 74.04(c) paragraphs and responses demonstrate movant's right to judgment *regardless of other facts or factual disputes.*'" *Id.* at 118 (citation omitted). Neither the circuit court nor the appellate court should "sift through the entire record to identify disputed issues, which, in turn, would cause a court to impermissibly act as an advocate for a party." *Id.*

## ANALYSIS

Appellants' Points I and III allege the court erred in granting summary judgment in favor of Progressive because Progressive failed to pay PIP benefits within 30 days of Appellants' demand letter. In Point I, Appellants assert Progressive's failure to timely pay the PIP benefits constituted a breach of the insurance contract. In Point III, Appellants argue Progressive's untimely payments of the PIP benefits were subject to interest and attorney's fees.

Perea's insurance policy provided that Progressive would pay PIP benefits "in accordance with the Kansas Automobile Injury Reparations Act" ("KAIRA").[2] Under KAIRA, PIP payments "shall be overdue if not paid within thirty (30) days after the

---

[2] K.S.A. 40-3101 *et seq.*

7

insurer . . . is furnished written notice of the fact of a covered loss and of the amount of the same." K.S.A. 40-3110(b). In determining the extent to which PIP payments are overdue, the statute provides that "payment shall be treated as being made on the date a draft or other valid instrument which is equivalent to payment was placed in the United States mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery." *Id.*

It is undisputed that Progressive received Appellants' demand for payment of Perea's PIP benefits on September 24, 2019. It is also undisputed that Progressive paid $2,102.25 of Perea's PIP benefits directly to Marvin's on October 31, 2019. As for the remaining $2,397.75 of Perea's PIP benefits, Progressive alleged in its statement of uncontroverted facts that it issued a draft payable to Janet Perea and Mirfasihi Law Offices in this amount on January 9, 2020, and presented it on that day to the United States Postal Service to be mailed to Mirfasihi's office. Progressive supported this factual allegation with the affidavit of its IT Process Analyst Lead, who designs and manages processes related to the mailing of Progressive documents. She averred that Progressive's computer system generated a draft for $2,397.75, payable to Janet Perea and Mirfasihi Law Offices, and mailed it to Mirfasihi's office address using Progressive's automated mail machine on January 9, 2020. Her affidavit referenced computer generated records of the draft's production and mailing that were attached to her affidavit.

Appellants argue this evidence was insufficient to establish that the $2,397.75 draft was mailed on that date because the best evidence rule required Progressive to

8

produce the actual draft that was placed in the mail.  We disagree.  While the best evidence rule "requires the original document be submitted to prove operative terms or content that are at issue," it does not apply "to writings in which the content of the writing is not at issue."  *Hale & Hale, Ltd. v. Arnold & Jeanie Pettit Declaration of Trust*, 298 S.W.3d 104, 108 (Mo. App. 2009).  More specifically, the best evidence rule is inapplicable when "the fact to be proved is evidenced in a writing but also exists independently of that writing."  *Lewandowski v. Ala. Hous. Fin. Auth.*, 637 S.W.3d 354, 362-63 (Mo. App. 2021) (quoting *Cooley v. Dir. of Revenue*, 896 S.W.2d 468, 470 (Mo. banc 1995)).  "The best evidence rule does not exclude evidence based on personal knowledge even if documents or other writings would provide some of the same information."  *Id*. at 363 (quoting *Cooley*, 896 S.W.2d at 470).

The issue here is not the terms or contents of the draft, but whether the draft was issued and placed in the mail on January 9, 2020.  These are facts that exist independently of the draft itself, and Progressive presented evidence of these facts based on the personal knowledge of one of its employees involved in the issuance and mailing of drafts and records supporting her testimony.  While it is undisputed that Mirfasihi's office did not receive the January 9, 2020 draft after it was mailed, Appellants offered no evidence to controvert that Progressive issued the draft and placed it in the United States mail on that date, which satisfied K.S.A. 40-3110(b)'s definition of when the payment was "made."[3]

---

[3] Citing *Estate of Nelson v. Missouri Department of Social Services*, 363 S.W.3d 423 (Mo. App. 2012), Appellants argue that Progressive had to show that payment was "made" by showing that the draft was not merely mailed but was cashed and cleared by the bank.  Kansas law—not

9

"A denial may not rest upon the mere allegations or denials of the party's pleading. Rather, the response shall support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." Rule 74.04(c)(2). Appellants failed to raise a genuine issue of material fact as to whether Progressive made the $2,397.75 payment to Appellants on January 9, 2020, by placing it in the mail on that date.

The undisputed facts show that Progressive mailed $2,102.25 of Perea's PIP benefits to Marvin's 37 days after receiving the demand letter, and it mailed the remaining $2,397.75 of the PIP benefits to Mirfasihi 107 days after receiving the demand letter. Pursuant to K.S.A. 40-3110(b), these payments were considered overdue because they were not made within 30 days of receipt of the demand letter. However, K.S.A. 30-2110(b) contains a caveat, as it states that "no such payment will be deemed overdue where the insurer . . . has reasonable proof to establish that it is not responsible for the payment, notwithstanding that notice has been furnished."

Thus, if an insurer has failed to timely pay PIP benefits to its insured, "the insurer must provide 'reasonable proof' to establish the insurer is not responsible for the payment of PIP benefits or a good faith belief that a controversy existed concerning the right to the payments or the amount of the payments." *Farmers All. Mut. Ins. Co. v. Garcia*, 33 Kan.App.2d 90, 93, 97 P.3d 501, 503 (2004). If the insurer cannot provide reasonable proof either that it is not responsible for the payment of PIP benefits or that a controversy

Missouri law—applies to this issue, and the controlling statute, K.S.A. 40-3110(b), specifically states that payment is "made" when it is placed in the United States mail.

over payment exists, "the insurer is subject to interest penalties and attorney fees." *Id.* Specifically, K.S.A. 40-3110(b) provides, "All overdue payments shall bear simple interest at the rate of eighteen percent (18%) per annum." K.S.A. 40-3111(b) allows an attorney "a reasonable fee for advising and representing a claimant" in an action for overdue PIP payments. "The attorney's fee shall be a charge against the insurer . . . in addition to the benefits recovered, if the court finds that the insurer . . . unreasonably refused to pay the claim or unreasonably delayed in making proper payment." K.S.A. 40-3111(b). Additionally, K.S.A. 40-256 permits the recovery of attorney's fees if the insurer's failure to pay was "without just cause or excuse." Whether the insurer had reasonable proof justifying a good faith belief that it was not responsible for the payment of PIP benefits, and whether the insurer delayed or refused payment of PIP benefits without just cause or excuse, are matters within the circuit court's discretion. *Farmers All.*, 33 Kan.App.2d at 93, 97 P.3d at 504.

The proof that Progressive cited to justify its overdue PIP payments is the undisputed fact that, on May 9, 2019, the Progressive employee who was handling Perea's claim contacted American Family and confirmed that American Family had an open liability and bodily injury claim and that American Family was handling coverage and payment of Perea's medical expenses. Progressive alleged that, following receipt of the demand letter on September 24, 2019, Progressive "took efforts to confirm" that Perea's bodily injury claim had not been "settled in full" with American Family. Progressive alleged "[s]uch steps were necessary to confirm that duplicative payments were not made."

11

To support this fact, Progressive offered the deposition testimony of the employee who was handling Perea's claim that, when Progressive received the demand, "[W]e were under the impression that American Family had paid. So in order to move forward with any kind of PIP benefits under our policy, they have to confirm that no payments were made by American Family so that there are no duplicates. So that has to be verified." Because an insured's settlement of a claim against a tortfeasor for an amount that would duplicate any PIP benefits owed the insured extinguishes the insurer's obligation to pay such PIP benefits, *see Chamberlain v. Farm Bureau Mut. Ins. Co.*, 36 Kan.App.2d 163, 173, 137 P.3d 1081, 1089 (2006), Progressive argues it was justified in delaying the PIP payments to confirm that American Family had not already paid Perea's medical expenses.

In response, Appellants argue that whether Progressive's payment of PIP benefits would have been duplicative of payments made by American Family is legally irrelevant because the September 24, 2019 demand letter was the "beginning and end of the question." We disagree. K.S.A. 40-3110(b) specifically allows the court to consider whether the insurer "has reasonable proof to establish that it is not responsible for the payment, *notwithstanding that notice has been furnished*." (Emphasis added.) Appellants offered no facts to dispute that the reason for Progressive's delay in PIP payments following receipt of the demand letter was to determine whether American Family had paid Perea's medical expenses and, in doing so, extinguished Progressive's responsibility for the payments. The court did not abuse its discretion in implicitly finding that Progressive had reasonable proof justifying a good faith belief that it was not

12

responsible for the payment of PIP benefits. The circuit court did not err in granting summary judgment on Perea's breach of contract claim and request for interest and attorney's fees based on late PIP payments. Points I and III are denied.

In Point II, Appellants contend the circuit court erred in granting Progressive's summary judgment motion because Progressive's payment of $2,102.25 in PIP benefits directly to Marvin's violated Missouri's prohibition against assignment of tort claims to health care providers. The undisputed facts show that Perea signed an assignment of benefits on April 18, 2019, assigning to Marvin's her right to make a claim for any benefits to which she was entitled under any insurance policy. The assignment was limited to the exact amount of all reasonable charges for necessary treatment.[4]

Missouri has a general public policy prohibiting the assignment of personal injury claims. *Ford v. Skaggs Chiropractic, LLC*, 599 S.W.3d 264, 267 (Mo. App. 2020). Missouri's medical lien statutes create a limited exception to this prohibition, allowing hospitals and healthcare providers to share in up to 50% of the net proceeds due the patient. §§ 430.225-430.250. The medical lien statutes provide the exclusive remedy for hospitals and healthcare providers to seek payment out of the proceeds of a patient's personal injury claim, which includes benefits from an insurance carrier, and the

---

[4] In their argument under this point, Appellants assert, without any citation to authority, that the assignment of benefits was unenforceable because Perea, who does not read or speak English, could not read or understand the assignment of benefits and believed she was signing a consent to treatment. This is an entirely different issue than that raised in Appellants' point relied on. Because Appellants' point relied on does not fairly encompass this claim, the claim is not preserved for appeal and will not be addressed. *Twehouse Excavating, Inc. v. Jefferson City Ret., LLC*, 613 S.W.3d 499, 507 n.4 (Mo. App. 2020).

procedures established in these statutes must be followed. *Ford*, 599 S.W.3d at 267. Appellants argue that, because Missouri's medical lien statutes were not followed, Perea's assignment of her PIP benefits to Marvin's was not enforceable.

Kansas, however, allows for the assignment of PIP benefits. *Bolz v. State Farm Mut. Auto Ins. Co.*, 274 Kan. 420, 435, 52 P.3d 898, 908 (2002). As the Kansas Supreme Court explained, "The free assignment of post-loss PIP benefits was provided for by the legislature in regulating accident and health insurance policies and was also required under the uniform policy provisions." *Id*. "The assignment of the insured's right to receive a post-loss PIP benefit to the medical practitioner that provided the medical services is enforceable as a matter of Kansas public policy and under the statutes of this state." *Id*.

Thus, if Missouri law applies, Perea's assignment of benefits to Marvin's was unenforceable; if Kansas law applies, the assignment was enforceable. To support their claim that Missouri law applies and rendered the assignment unenforceable, Appellants cite *Farmers Insurance Company v. McFarland*, 976 S.W.2d 559 (Mo. App. 1998), and *Gilmore v. Attebery*, 899 S.W.2d 164 (Mo. App. 1995). These cases examined the enforceability of an insurer's PIP lien under a Kansas insurance policy for reimbursement of PIP payments for injuries resulting from a Missouri accident.

In *McFarland*, an insurance company, whose insured was a Kansas resident, filed suit against its insured's passenger, a Missouri resident, for reimbursement of PIP payments after the passenger received a settlement from the tortfeasor. 976 S.W.2d at 560. In *Gilmore*, an insurance company, whose insured and his passenger were both

14

Kansas residents, sought reimbursement from the tortfeasor, an Illinois resident, for PIP payments the company made to its insured and his passenger. 899 S.W.2d at 165-66. In both cases, the parties against whom the insurers were seeking reimbursement asserted that the PIP reimbursement provision of the Kansas insurance policy was unenforceable in Missouri courts because it was against Missouri's public policy prohibiting the assignment of personal injury claims. *McFarland*, 976 S.W.2d at 561; *Gilmore*, 899 S.W.2d at 166. Applying conflict of laws principles, we determined that, while both Kansas and Missouri had a significant interest in the actions, Missouri's policy interest would be more impaired if Kansas law were applied than Kansas's policy interest would be if Missouri law were applied based on the facts in those cases. *McFarland*, 976 S.W.2d at 562-66; *Gilmore*, 899 S.W.2d at 167-69.

Appellants argue that, in *McFarland* and *Gilmore*, we held that Missouri's policy of non-assignability of personal injury claims was more important than Kansas's allowance of such assignments in all cases and under all circumstances. They further argue that, in *McFarland* and *Gilmore*, we "rejected" our prior holding in *Bell v. Mid-Century Insurance Company*, 750 S.W.2d 708 (Mo. App. 1988), that Kansas law applied where an insurance company filed suit in Missouri to enforce its Kansas insurance policy's PIP lien provision against its insured, a Kansas resident, who was injured in a Missouri accident. Appellants insist that *Bell* is an "aberration" and is "not good law."

Appellants read *McFarland* and *Gilmore* far too broadly and ignore the lengthy discussion in those cases as to why the facts of *Bell* compelled us to reach a different result. Specifically, in both *McFarland* and *Gilmore,* we examined the special conflict of

laws rule of the principal location of the insured risk that was applicable in *Bell*. *McFarland*, 976 S.W.2d at 563-65; *Gilmore*, 899 S.W.2d at 169-70. This rule provides, "In an action *between the parties to an insurance contract*, the principal location of the insured risk is the most important contact to be considered in determining the applicable law." *McFarland*, 976 S.W.2d at 564 (quoting *Gilmore*, 899 S.W.2d at 169). We explained that where, as in *Bell*, the dispute was between the original parties to the insurance contract, those parties "should certainly be bound by their mutual expectations" and, as Kansas residents, "should not be surprised by the application of Kansas law to their Kansas contract of insurance." *Gilmore*, 899 S.W.2d at 169. Because the disputes in *McFarland* and *Gilmore* were not between the original parties to the Kansas insurance contract and involved parties who had no contact with the state of Kansas, we held that the principal location of the risk rule did not apply and that *Bell* was not controlling in those cases. *McFarland*, 976 S.W.2d at 564, *Gilmore*, 899 S.W.2d at 170.

*Bell* is controlling in this case, however, as it is a suit between the original parties to the Kansas insurance policy who are both Kansas residents and, as such, should not be surprised by the application of Kansas law to their Kansas contract of insurance. Because Kansas law applies, Perea's assignment of benefits to Marvin's is enforceable. The circuit court did not err in entering summary judgment in favor of Progressive on this claim. Point II is denied.

In Point IV, Appellants contend the circuit court erred in entering summary judgment in favor of Progressive because Progressive's payment to Marvin's did not "consider" Mirfasihi's contracted-for attorney's fees of 45% of all gross proceeds,

16

including future payments on any claims. Appellants argue that Section 484.140, the attorney lien statute, gave Mirfasihi a 45% lien on the $2,102.25 payment that Progressive made to Marvin's directly pursuant to Perea's assignment of benefits; therefore, Progressive was required to pay Mirfasihi 45% of that payment, or $946.01.

It is unclear whether Appellants are arguing that Progressive should have deducted Mirfasihi's $946.01 in attorney's fees from the $2,102.25 it paid to Marvin's, or that Progressive should have paid Mirfasihi $946.01 out of the $2,397.75 remaining from Perea's $4,500 PIP benefits after Progressive paid Marvin's. To the extent that Appellants are asserting Progressive should have reduced the amount it paid Marvin's by the amount of Mirfasihi's attorney's fees, we determined in Point II that Perea's assignment to Marvin's of her right to make a claim for any benefits to which she was entitled under any policy of insurance was valid and enforceable. The assignment was limited to the exact amount of all reasonable charges for necessary treatment Marvin's provided to Perea, and the terms of the assignment required Progressive to make payment directly to Marvin's. Under Kansas law, the assignment passed all of Perea's interest in the applicable PIP benefits to Marvin's and divested her of "all right of control" over those PIP benefits. *Patrons State Bank & Trust Co. v. Shapiro*, 215 Kan. 856, 861, 528 P.2d 1198, 1203 (1974). Upon Perea's execution of the assignment on April 18, 2019, any claim for reasonable charges associated with the treatment Marvin's provided Perea belonged to Marvin's. Progressive could not reduce the amount it paid to Marvin's by the amount of Mirfasihi's attorney's fee.

17

To the extent that Appellants are asserting Progressive should have paid Mirfasihi's attorney's fees out of the amount of Perea's $4,500 PIP benefits remaining after Progressive paid Marvin's, Appellants' September 24, 2019 demand letter directed Progressive to make "one check payable to Janet Perea, and Mav Mirfasihi attorney." The summary judgment record shows that Progressive complied with this instruction, as it made one check for the remaining $2,397.75 payable to Perea *and* Mirfasihi Law Offices. Appellants cannot now credibly claim that, in complying with their instruction to deliver one check made out to both of them, Progressive violated the attorney lien statute. The circuit court did not err in granting summary judgment on this claim. Point IV is denied.

## CONCLUSION

The judgment is affirmed.

_____
LISA WHITE HARDWICK, JUDGE

All Concur.